**Louis H. KING, Jr., Appellant,**

v.

**INDUSTRIAL BANK OF WASH-INGTON, Appellee.**

**No. 83–254.**

District of Columbia Court of Appeals.

Argued Feb. 8, 1984.
Decided March 28, 1984.

Prudence Bushnell, Bethesda, Md., with whom Jeffrey Lee Greenspan, Washington, D.C., was on the brief, for appellant.

Joseph Sperling, Rockville, Md., for appellee.

Before MACK, BELSON, and TERRY, Associate Judges.

1. There is some dispute between the parties over the date of the loan, but no dispute over the fact that it was made.

TERRY, Associate Judge:

This is an appeal from an order granting summary judgment for a bank in an action by the bank against appellant, the guarantor of a loan in default. We hold that there were no material issues of fact and that, on the undisputed facts, the bank was entitled to judgment as a matter of law. Accordingly, we affirm.

## I

In January 1979 appellant King, president of the now-defunct Nectra Corporation, and Bentley V. Plummer, Nectra's secretary-treasurer, each signed documents labeled "Unlimited Guaranty" by which they personally guaranteed "payment when due ... of any and all liabilities" of Nectra to the Industrial Bank of Washington. Each document stated that the guaranty was made "[i]n consideration of financial accommodations given or to be given or continued" to Nectra by the bank. The bank subsequently made a $20,000 loan to Nectra, evidenced by a promissory note.[1] In 1981, after Nectra defaulted, the bank brought this action against Nectra on the note and against Plummer and appellant on their respective guaranties. The trial court entered a default judgment against Nectra in February 1982.

In his answer to the complaint, appellant asserted *inter alia* that he had been "personally assured by a Mr. Blunt," one of the bank's loan officers, "that his signature [on the guaranty] was needed only as President of Defendant Nectra Corporation and not to impose personal liability on him." In responding to one of the bank's interrogatories, he stated that he had not read the guaranty before signing it and repeated his claim about Mr. Blunt's alleged representation; significantly, however, he did not assert that Mr. Blunt's statement had induced him to sign the guaranty without reading it.

In November 1982 the trial court granted summary judgment for the bank against Plummer, who by that time was in a federal penitentiary. The bank then moved for summary judgment against appellant. In his opposition to the motion, appellant argued that the issues he had raised made summary judgment inappropriate, specifically contending that Mr. Blunt's alleged statement "would constitute misrepresentation and Plaintiff bank would be bound by the actions of its employee. While this allegation may be denied by Plaintiff, it certainly raises an issue of material fact to be resolved by the fact finder at trial."

At the hearing on the summary judgment motion, when the court questioned appellant's counsel about the legal significance of Mr. Blunt's statement, counsel replied that it would amount to a "material misrepresentation ... that would bind the bank ...." In response to a question whether that would "vitiate the contract," counsel conceded that it would not, asserting only that Mr. Blunt's statement "raises an issue that has to be determined as to what the combined effect of this written contract saying one thing and Mr. Blunt saying the other thing is on the nature of what the liability of Mr. King is, if any, to the bank." A moment later, when the court asked how Mr. Blunt's statement could give rise to a defense to liability on the guaranty, appellant's counsel replied:

> [O]n the theory that then in fact the agreement between the parties, between Mr. King and the bank was that Mr. King was simply signing in his official capacity, and was not signing as a personal guarantor. That's the question is [*sic*] what were these parties agreeing to when Mr. King signed the document and he was having the telephone conversation with Mr. Blunt?

At no time did appellant ever assert that he had in fact relied on Mr. Blunt's alleged misrepresentation, nor can such an assertion be inferred from any of his submissions, either oral or written,[2] to the trial court.

At the conclusion of the hearing, the court ruled that D.C.Code § 28:3–403 (1981), which is part of the Uniform Commercial Code (UCC), barred appellant from asserting that he was not personally liable under the terms of the guaranty. Having already rejected appellant's other defenses,[3] the court said that Mr. Blunt's assurance would not be material unless appellant had presented it as an affirmative defense. Finding that he had not, the court granted summary judgment for the bank. Appellant's principal argument before us is that Mr. Blunt's statement raised an issue of material fact, barring summary judgment.

## II

D.C.Code § 28:3–403 (1981) provides in part:

> (2) An authorized representative who signs his own name to an instrument
>> (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity ....

The trial court erred in holding that this section barred parol evidence on the question of appellant's liability on the guaranty, but the error was harmless.

■ Section 28:3–403 deals only with the liability of a person who has signed an "instrument," which section 28:3–102(1)(e) defines as "a negotiable instrument." Neither the guaranty nor the promissory note in this case is a negotiable instrument, because neither document is "payable to order or to bearer," as the UCC requires. D.C.Code § 28:3–104(1)(d) (1981). In addi-

---

2. *I.e.,* his answer to the complaint, his answers to interrogatories, his opposition to the motion for summary judgment, and his counsel's argument at the hearing on the motion for summary judgment.

3. Appellant also raised defenses of lack of consideration, failure of consideration, and lack of mutuality of obligation, which we shall discuss in part IV of this opinion.

tion, the guaranty contains a promise to pay "any and all liabilities" of Nectra to the bank. A negotiable instrument however, must contain a promise to pay "a sum certain in money ...." D.C.Code § 28:3–104(1)(b) (1981). There is no way to construe a promise to pay "any and all liabilities" as a promise to pay a sum certain in money. Thus section 28:3–403, on which the trial court based its ruling, is inapplicable to this case.

 While the trial court erred in relying on this section of the UCC, it did not err in invoking the principle which it embodies: the parol evidence rule. Generally, the terms of an unambiguous contract may not be contradicted by evidence of prior oral agreements. *E.g., Dixon v. Wilson,* 192 A.2d 289, 291 (D.C.1963); *Giotis v. Lampkin,* 145 A.2d 779, 781 (D.C.1958). Only if the court determines that an ambiguity exists, which is a question of law, is parol evidence admissible to resolve the ambiguity. *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983); *Dixon v. Wilson, supra,* 192 A.2d at 291. In a case such as this, unless a contract is ambiguous as to whether the signer is personally liable, parol evidence is inadmissible to change its terms. Section 28:3–403 is simply an expression of this rule as applied to negotiable instruments. The designation of the signer as an agent and the naming of the principal are essential to the avoidance of liability on negotiable and non-negotiable contracts alike. *See American Insurance Co. v. Smith,* 472 A.2d 872, 875 (D.C. 1984). The guaranty in this case neither identified appellant as Nectra's agent nor named Nectra as guarantor. Nothing else in the guaranty is in any way ambiguous. Therefore, while section 28:3–403 did not control, the common-law principle which it codifies did. The trial court was correct in holding that, under the terms of the guaranty, Mr. Blunt's assurance was not material to appellant's liability.

### III

 Of course, the lack of ambiguity does not bar the use of parol evidence to prove fraud or misrepresentation. *E.g., Robinson v. Carter,* 77 A.2d 174, 177 (D.C. 1950); *First National Bank v. Fox,* 40 App.D.C. 430, 436 (1913). Even appellant's admitted failure to read the guaranty would not prevent him from asserting misrepresentation as an affirmative defense. It has long been the law in the District of Columbia that when a party seeking to enforce a contract has induced the other party, by fraud or misrepresentation, to sign it without reading it, a failure to read the document does not prevent the misled party from avoiding enforcement. *E.g., Hollywood Credit Clothing Co. v. Gibson,* 188 A.2d 348, 349 (D.C.1963); *Stern v. Moneyweight Scale Co.,* 42 App.D.C. 162, 165 (1914). However, a crucial element of a claim of misrepresentation is reliance. Misrepresentation by one party to a contract will not relieve the other party of his contractual obligation unless he relied on the misrepresentation and was induced by it to enter into the contract. *E.g., Security Investment Co. v. Garrett,* 3 App.D.C. 69, 76 (1894); RESTATEMENT (SECOND) OF CONTRACTS § 164, comment c (1981).

 Nowhere in this record is there any claim of reliance. It was not alleged in any pleading or document filed with the trial court, as appellant conceded at oral argument. We cannot accept appellant's invitation to read the pleadings as including a claim of reliance by implication, because to do so would be a distortion of the record. Even at the hearing on the motion for summary judgment, although appellant's counsel had several opportunities to assert that his client had relied on Mr. Blunt's assurances, he never did so. Consequently, with a major element of the defense of misrepresentation absent from the case, the trial court was correct in concluding that appellant had failed to raise a material factual issue which would defeat summary judgment. The claim of misrepresentation did raise an issue of fact, but without an

assertion of reliance, the issue was not material.[4]

## IV

 Appellant's remaining claims of lack of consideration, failure of consideration, and lack of mutuality of obligation are all essentially the same, and we reject them all for the same reasons. Appellant seems to contend that the guaranty lacked consideration because it placed the bank under no obligation to lend any money to Nectra. But that is the nature of a unilateral contract: the promisor (appellant) makes his promise (the guaranty) in exchange for a proposed act (the loan to the corporation). So long as that act remains unperformed, the promisor is not bound. The act which the offer seeks, however, is the consideration for the promise. Performance of the act constitutes acceptance of the offer, and at that point a contract comes into being. *See* WILLISTON, CONTRACTS § 65 (3d ed. 1957). In the instant case, until the loan was made, there was no consideration for the guaranty and thus no contract. The making of the loan, however, was consideration for appellant's promise, and as soon as the loan was made, the contract became binding. *See* RESTATEMENT, *supra*, § 71, comment e, illustration 14. Since there is no dispute that the loan was made, appellant cannot validly claim either lack or failure of consideration.

 Appellant's assertion that there was no mutuality of obligation is equally meritless. The essence of a unilateral contract, such as the guaranty in this case, is that neither party is bound until the promisee accepts the offer by performing the

proposed act. Mutuality of obligation is merely another name for the requirement of consideration in bilateral contracts. *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 389 (8th Cir. 1968); *see Miami Coca-Cola Bottling Co. v. Orange Crush Co.*, 291 F. 102 (S.D.Fla. 1923), *aff'd*, 296 F. 693 (5th Cir.1924); WILLISTON, *supra*, § 105A; RESTATEMENT, *supra*, § 79. The term has no application to unilateral contracts. WILLISTON, *supra*, § 13; RESTATEMENT, *supra*, § 79, comment f; *see* WILLISTON, *supra*, § 105A, at 80 (Supp.1983) (correcting error in main volume).

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

---

**4.** We therefore do not consider whether the bank might have been entitled to summary judgment on the alternative ground that appellant would not have been justified in relying on Mr. Blunt's representation that the guaranty would not impose personal liability on him. It appears to be the law in the District of Columbia, at least in cases involving contracts, that reliance on another person's misrepresentation need not be reasonable, "as long as the party was *genuinely deceived*." *Saylor v. Handley Motor Co.*, 169 A.2d 683, 685 (D.C.1961); *accord, Bob Wilson, Inc. v. Swann*, 168 A.2d 198, 200

(D.C.1961); *Stern v. Moneyweight Scale Co., supra*. There are tort cases, however, which might be read as suggesting otherwise. *See Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706–707 (D.C.1981); *Rosenberg v. Howle*, 56 A.2d 709, 710 (D.C.1948) ("The party to whom the misrepresentation is made must ... be warranted in accepting it ..."). We need not resolve this possible conflict in the case law by deciding whether reliance on a misrepresentation must be reasonable, since no reliance was ever alleged by appellant in the first place.