**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Jackie GARDNER and Gardner Land Company, Inc., Defendants,**

v.

**Lawrence E. STATON and Joe Siebenmorgen (Third Party Defendants).**

**Civ. A. No. J82–0666(B).**

United States District Court, S.D. Mississippi, Jackson Division.

April 19, 1985.

Paul J. Stephens, Jamie G. Houston, III, Watkins & Eager, Jackson, Miss., for plaintiff.

Roy D. Powell; Michael S. Allred, Edwin Y. Hannan, Thomas L. Kirkland, Jr., Satterfield & Allred, Jackson, Miss., for defendants.

Robert McHenry, Little Rock, Ark., for Joe Siebenmorgan.

### MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter came before this Court on three Motions for Summary Judgment.[1] Federal Deposit Insurance Corporation

---

1. Jackie Gardner and Gardner Land Company, Inc., filed Petitions (numbered respectively 8401479JC and 8401486JC) in the United States Bankruptcy Court for the Southern District of Mississippi on October 16, 1984; however, Honorable Barney E. Eaton, Chief Bankruptcy Judge, entered Orders dated January 24, 1985, in said causes which modified the stay provisions of 11 U.S.C. § 362 to allow the Motions for Summary Judgment in this action to be resolved and judgments to be entered in accordance therewith.

("FDIC") was substituted as party plaintiff in place of the Bank of Quitman, Quitman, Arkansas, an Arkansas State Bank ("Bank").[2] The Bank had originally filed a "Declaration" (hereinafter "Complaint") against two Mississippi Defendants, Jackie Gardner and Gardner Land Company, Inc. ("Defendants"), seeking recovery of $80,-000 plus interest and other costs as provided in the certain promissory note executed by Defendants in favor of Bank.

The subject note is one of several documents evidencing a three-way lending transaction. Apparently Lawrence Staton (a non-pleading, third-party Defendant) was over the credit limit which Bank could properly maintain. In addressing this situation, the Bank agreed to and did loan to Defendants the sum of $80,000.00 on a secured basis. Defendants, in turn, accepted an unsecured note in the sum of $80,000.00 from Staton. Defendants also agreed to apply most of the proceeds received from Bank to the credit of Staton at the Bank. Joe Siebenmorgen (a third-party Defendant), then President and Chairman of the Board of Bank, apparently with full authority of Bank and on its behalf, executed a written agreement whereby Bank would release Defendants' pledged realty (Bank did, in fact, abide by the agreement to the extent that it released the pledged property) and would never seek collection of the subject promissory note from Defendants but would look solely to Staton for its repayment.

Defendants admit that the note exists and that they executed the note. Defendants fail to adequately deny the occurrence of all conditions precedent to the FDIC's recovery of the note.[3] Defendants do, however, deny that the note is due and payable and further deny that they are liable for the amounts evidenced by the note on the basis of Defendants' affirmative allegation that the Bank had agreed in writing to look solely to Staton and never to Defendants for repayment of such note. Defendants attach to their answer a document which purports to be a copy of this alleged side agreement.

The FDIC seeks summary judgment against Defendants on the promissory note. Defendants seek summary judgment against the FDIC based on the affirmatively alleged side agreement.

Defendants filed a third-party complaint for fraud or fraudulent inducement against Joe Siebenmorgen, the President and Chairman of the Board of Directors of Bank at the time the referenced transactions took place. Siebenmorgen, evidently in his capacity as an officer of and with the authority of Bank, signed the side agreement which allegedly negates Defendants' obligations to Bank under the subject note. Defendants also claim that they are entitled to indemnification for any such judgment from Staton, and that they are entitled to recover on the promissory note executed by Staton to Defendants which contains terms identical to the terms of the note Defendants executed to Bank (except that Staton's note to Defendants is unsecured). Defendants attach a copy of this identical note to their Third-Party Complaint. Staton has failed to answer or otherwise defend the Third-Party Complaint exhibited against him.

---

**2.** While ordering the substitution of FDIC as proper party plaintiff for Bank in this action, Honorable Harold Cox, United States District Judge for the Southern District of Mississippi, in this action, pursuant to an *agreed order* rendered in this action on February 17, 1983, found that the parties were in agreement and further that

Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC"), has properly intervened as a party to this suit, and, by virtue of its purchase of certain assets formerly owned by Bank of Quitman, including the certain promissory note at issue in this suit, is the successor in interest to the Bank of Quit-

man, the original plaintiff herein, and should be substituted as the only plaintiff herein. The Court finds further that, pursuant to 12 U.S.C. § 1819, FDIC has properly removed this suit from the Circuit Court of Rankin County, Mississippi to this Court and that this Court has jurisdiction over the parties and the subject matter hereof.

Agreed Order dated February 17, 1983, p. 1. The Court also determined that this Court has subject matter jurisdiction, *inter alia*, pursuant to 12 U.S.C. § 1819.

**3.** See Rule 9(c) F.R.Civ.P.

Defendants only seek summary judgment against Siebenmorgen for fraud and seek damages therefor in the amount of any judgment which this Court may enter against Defendants in favor of the FDIC on the subject note. Defendants also seek leave to amend their answer to the Complaint to assert the defenses of lack or failure of consideration.

## I. MOTION FOR SUMMARY JUDGMENT BETWEEN FDIC AND DEFENDANTS

The pleadings, depositions, answers to interrogatories and admissions on file, and stipulations of record together with the affidavits and other materials outside the pleadings submitted to this Court in support of, and in opposition to, the various Rule 56 Motions establish that the FDIC did acquire the subject note under 12 U.S.C. § 1823.[4] The FDIC is not pursuing this action in its capacity as receiver of Bank, rather, it is pursuing this action as the owner of an asset of a failed bank acquired by it under 12 U.S.C. § 1823.

### (a) SECTION 1823(e)

The FDIC counters the Defendants' affirmatively asserted "side agreement" by citation to 12 U.S.C. § 1823(e) which provides as follows:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this Section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from

the time of its execution, an official record of the bank.

Requirements numbered 1 and 2, for purposes of this Rule 56 determination, appear to be established or, at least, their establishment is not disputed. With regard to requirement numbered 4 there appears to be an arguable dispute as to whether the side agreement was "an official record of the bank." On one hand, the FDIC has presented evidence which supports the fact that the agreement between Defendants and Siebenmorgen was not an official record of the Bank: A federal bank examiner who reviewed the official records of the bank, Robert C. Barber, testified that he had never seen the agreement between Defendants and Siebenmorgen during his examinations of the records of the Bank. Deposition of Robert C. Barber, p. 117. The argument of Defendants that there were bank examiners other than Robert C. Barber does not controvert Barber's testimony that the agreement was not presented for his examination of the official records of the Bank and, more importantly does not establish that the agreement was an official record of the Bank. However, Defendants do argue that the side agreement was produced by the FDIC to Defendants during discovery. This argument, if not otherwise explicable, casts a certain doubt as to whether the agreement was "an official record of the Bank." Further inquiry into this question is unnecessary because of the following deficiency.

■ With regard to requirement numbered 3, it is undisputed that the minutes of the Board of Directors of the Bank dated February 15, 1978, are the applicable minutes with regard to the subject note, and that such minutes reveal only the following:

> Board reviewed the Commercial and Installment Loans made by the Officers for the months of December and January.

---

4. See Note 2 Supra. Furthermore, Defendants' mere assertion that the record is silent regarding the method by which the FDIC acquired the subject note is insufficient to dispute or recant Defendants' previous stipulation that the FDIC

purchased the subject note under Section 1823. Defendants failed to come forward with any evidentiary matter to indicate that the FDIC did not acquire the subject note under § 1823.

A motion was made by J.A. Bailey and seconded by Ben F. Clark to approve the loans as presented. Motion carried.

Defendants' Exhibit "F" to their Motion for Summary Judgment against FDIC. This entry on the minutes of the meeting of the Board of Directors of the Bank establishes that the affirmatively asserted side agreement was not specifically "approved by the Board of Directors of the Bank or its loan committee." The entry manifests that specific approval of the subject side agreement is not "reflected in the minutes of said board or committee." The side agreement itself must be referenced or its existence must be affirmatively and directly acknowledged by the Bank's board of directors or loan committee, and such reference to, or acknowledgment of the side agreement must be specifically reflected in the minutes of the board or committee. 12 U.S.C. § 1823(e). Since the written agreement between Siebenmorgen (presumably for the Bank) and the Defendants is not evidenced in the subject promissory note, § 1823(e) is applicable. *Federal Deposit Insurance Corporation v. Kucera Builders, Inc.*, 503 F.Supp. 967, 971 (N.D.Ga. 1980).

Because at least one of the four requirements of § 1823(e) is shown to be unsatisfied, and since Defendants have failed to present any contrary evidence, the agreement between Seibenmorgan (for the Bank) and Defendants is not enforceable against the FDIC in this case. *See Federal Deposit Insurance Corporation v. de Jesus Velez*, 678 F.2d 371, 375 (1st Cir.1982); *Federal Deposit Insurance Corporation v. Hoover-Morris Enterprises*, 642 F.2d 785, 787–88 (5th Cir.1981). *See also D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed.2d 956 (1942) (an agreement which is designed to or does mislead the FDIC and other creditors is not enforceable against the FDIC even if that agreement is innocently entered into by the maker of the otherwise enforceable note); *Chatham Ventures, Inc. v. Federal Deposit Insurance Corporation*, 651 F.2d 355, 360–61 (5th Cir.1981).

■ If Section 1823(e) is applicable to an agreement, it is applied regardless of any knowledge, actual or imputed, which the FDIC may have had regarding the terms of the side agreement. *See Federal Deposit Insurance Corporation v. Merchants National Bank of Mobile*, 725 F.2d 634, 640 (11th Cir.1984); *Federal Deposit Insurance Corporation v. de Jesus Velez*, 678 F.2d at 375 (holder in due course provisions of Uniform Commercial Code do not override provisions of § 1823(e)). The Eleventh Circuit recently held as follows:

> If a side agreement does not meet the requirements of Sec. 1823(e), FDIC's knowledge of the terms of that side agreement does not render it valid against FDIC or estop FDIC from enforcing the agreement as contained in failed bank's records.

*Federal Deposit Insurance Corporation v. Merchants National Bank of Mobile*, 725 F.2d at 640.

### (b) *MOTION TO AMEND*

■ Further, this Court finds that the defenses of lack of or no consideration, which defenses have or have not existed from the date the original declaration was filed on January 20, 1982, are not only not timely presented but are also fruitless under the facts and law of this case. In *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation*, 315 U.S. at 457–60, 62 S.Ct. at 679–680, the Supreme Court was faced with an appeal by a borrower (petitioner) from a federally insured bank whose assets had been acquired by the Federal Deposit Insurance Corporation as part of the collateral securing a loan made in connection with the assumption of the banks deposit liability by another bank. The FDIC (respondent) instituted suit to collect the note in the sum of $5,000, and petitioner alleged that the note was given without any consideration whatever and with the understanding that no suit would be brought thereon. In upholding the district court's holding that petitioner was estopped to assert want of consideration as a defense, the Supreme Court held as follows:

But the reach of the rule which prevents an accommodation maker of a note from setting up the defense of no consideration against a bank or its receiver or creditors is not delimited to those instances where he has committed a statutory offense. [A]n accommodation maker is not allowed that defense as against the receiver of the bank and its creditors, or at times even as against the bank itself, where his act contravenes a general policy to protect the institution of banking from such secret agreements. In some of those cases, the accommodation maker was party to the scheme of deception, in the sense that he had full knowledge of the intended use of the paper.... "The defendant may not have intended to deceive any person, but when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced." [*Quoting Mount Vernon Trust Co. v. Bergoff,* 272 N.Y. 192, 196, 5 N.E.2d 196, 197.]

Furthermore, the fact that creditors may not have been deceived or specifically injured is irrelevant. [I]t is the 'evil tendency' of the acts to contravene the policy governing banking transaction which lies at the root of the rule.

Those principles are applicable here, because of the federal policy evidenced in this Act to protect respondent, a federal corporation, from misrepresentations made to induce or influence the action of respondent, including misstatements as to the genuineness or integrity of securities in the portfolios of banks which it insures or to which it makes loans. Those principles call for an affirmance of the judgment below.

Clearly respondent is a member of the creditor class which the banking authorities were intended to protect. Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners.... Moreover, as we have seen, the inability of an accommodation maker to plead the defense of no consideration does not depend on his commission of a penal offense. The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.... If the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the statute by taking advantage of an undisclosed and fraudulent arrangement which the statute condemns and which the maker of the note made possible.

*D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation,* 315 U.S. 458–61, 62 S.Ct. 679–681. (citations omitted).

Accordingly, Defendants' Motion to amend should be denied.

While Defendants argue that the FDIC had actual knowledge that the proceeds of the loan transaction were used for the benefit of Lawrence Staton and not for the benefit of Defendants, the documents upon which Defendants rely to support this argument, Exhibits "D" & "E" to their Motion for Summary Judgment, negate the fact that the FDIC had knowledge of the side agreement. In fact, said exhibits tend to prove that the FDIC was misled regarding Siebenmorgen's and the Bank's intention to collect the indebtedness from Defendants and of the Bank's continued interest in Defendants' Mississippi real property as collateral for the subject note. Said documents further tend to prove that the FDIC relied on the Bank's representations that legal action would be instituted

against Defendants for collection of the indebtedness.

It thus appears undisputed, even if it were relevant once the provisions of § 1823(e) attach, that the FDIC had no knowledge of the secret arrangement between the other parties in this action and Bank. In the absence of the FDIC's actual knowledge of the side agreement, the holding of United States Supreme Court in *D'Oench, Duhme & Co.* or, despite any such actual knowledge, the provisions of 12 U.S.C. § 1823(e) control the issues in this case and dictate that summary judgment should be granted in favor of the FDIC. Accordingly, as a matter of law, summary judgment should not be granted in favor of Defendants as against the FDIC.

## II. SUMMARY JUDGMENT MOTION AGAINST SIEBENMORGEN

 Defendants, Jackie Gardner and Gardner Land Company, Inc., also seek summary judgment against Joe Siebenmorgen on state law fraud claims. In their Motion, Defendants assert that if summary judgment is granted in favor of the FDIC against them, then they will have been injured as a result of the fraud of Siebenmorgen. This Court, however, finds that while it may be that there is no genuine issue of any material fact, Defendants, nevertheless, are not entitled to judgment as a matter of law against Siebenmorgen on their fraud theories. Furthermore, the viability *vel non* of Defendants' fraud claims in this case does not affect the appropriateness of entering a summary judgment against Defendants on the note in favor of FDIC. *See Federal Deposit Insurance Corporation v. Kucera Builders, Inc.*, 503 F.Supp. 967, 971–73 (N.D.Ga. 1980).

## III. DIRECTION FOR THE ENTRY OF JUDGMENT

The above opinion of this Court and the judgment to be entered thereon will finally decide all questions arising under federal law and will leave unresolved only Defendants' state law third-party claims against Siebenmorgen and Staton. If Defendants have any legitimate claim against either

third-party Defendant the existence of which was contingent upon Defendants' liability to the FDIC as corporate purchaser and enforcer of the subject note, then that contingency has been removed. Since the Defendants' estates are now subject to the provisions of the United States Bankruptcy Act, the collection of any damages as a result of Siebenmorgen's or Staton's alleged fraud or breach of contract and any amount due from Staton to Defendants pursuant to the alleged promissory note allegedly executed by Staton are matters which are separate and apart from Defendants' liability to the FDIC under the subject promissory note. Accordingly, this Court expressly determines that there is no just reason to delay entry of a final judgment in favor of the FDIC against Defendants Jackie Gardner and Gardner Land Company, Inc., and this Court hereby makes an express direction for the entry of such judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure. In accordance with the opinion and holding hereinabove expressed, a separate, final judgment should and will be entered as to the liability and damages of Defendants to the FDIC.

## IV. AMOUNT OF JUDGMENT

With regard to the amount of damages to which the FDIC is entitled under the allegations in its complaint and under the provisions of the note and in accordance with the material submitted to the Court in these Rule 56 motion determinations, judgment should be rendered and entered in favor of Plaintiff, Federal Deposit Insurance Corporation, in its corporate capacity, against Defendants Jackie Gardner and Gardner Land Company, Inc., jointly and severally, in the total amount of $149,-359.84, plus all costs of this action together with interest on the total amount of the judgment from and after the date hereof until paid in accordance with 28 U.S.C. § 1961. Said judgment amount represents the principal of the subject promissory note which is due in the amount of Eighty Thousand Dollars ($80,000.00) together with accrued interest on that principal amount cal-

culated at the contract rate of nine and one half percent (9½%) per annum from and after December 16, 1977, to the date hereof, such accrued interest being in the aggregate amount of $55,781.68; plus the stipulated attorney's fees of ten percent (10%) of the combined principal and interest amounts due on the note,[5] said collection fee award being in the sum of $13,578.16.

5. See *Jack Cole-Dixie Highway Co. v. Redball Motor Freight, Inc.*, 254 So.2d 734, 741 (Miss. 1971) (holder of promissory note setting forth a stipulated percentage of the amount due as a reasonable collection expense or attorney's fee in the event of a default under the note is entitled to apply such stipulated percentage to the total amount due under the note; i.e., principal plus accrued interest).