OPTON, INC. et al.,

Howard Tytel, Appellant,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Appellee.

No. 93–CV–602.

District of Columbia Court of Appeals.

Argued June 8, 1994.
Decided Sept. 15, 1994.

Barrie D. Berman, with whom Barry H. Gottfried, Washington, DC, was on the brief, for appellant.

Christopher J. Bellotto, with whom Ann S. DuRoss and Robert D. Mcgillicuddy, Washington, DC, were on the brief, for appellee.

Before WAGNER,* Chief Judge, and FERREN ** and SCHWELB, Associate Judges.

FERREN, Associate Judge:

The National Bank of Washington (NBW) lent money to Opton, Inc. in exchange for a promissory note from Opton and personal guaranties from Stephen and Mallary Tytel and from appellant Howard Tytel. Opton defaulted on its obligations under the note, and NBW sued Opton and the Tytels for the amount due. After filing the complaint, NBW was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed the bank's receiver. The trial court substituted FDIC for NBW as the "real party in interest." The court then entered a default judgment against Opton and granted FDIC's motion for summary judgment against all three Tytels. Only Howard Tytel filed a notice of appeal. We affirm summary judgment in FDIC's favor since each of appellant's proffered defenses fails as a matter of law. Specifically, (1) D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C.A. § 1823(e) (1989) bar appellant's defense that he never delivered an unconditional guaranty to the bank; (2) appellant cannot escape liability on his guaranty by asserting that Stephen Tytel, Opton's president, lacked mental capacity and corporate authority to execute the underlying note; and (3) the language of appellant's unconditional guaranty precludes appellant from defending against FDIC on the ground that appellant had received no consideration for his guaranty or that NBW had impaired its collateral and thereby discharged appellant's obligation.

I.

Opton was a District of Columbia corporation that operated retail stores selling various "gadgets." In 1987, Opton obtained a loan from NBW. The following year, on October 7, 1988, Opton's owner and president, Stephen Tytel, and his wife Mallary Tytel, executed a written, unconditional guaranty in which they personally guaranteed the payment of all sums Opton owed NBW "now and hereafter existing." On October 19, 1988, appellant Howard Tytel, Stephen Tytel's brother and Opton's corporate secretary, executed an identical guaranty—the document at issue in this case—in which appellant also personally guaranteed the payment of all sums Opton owed NBW "now and hereafter existing." Appellant's guaranty has never been terminated and has continued in full force and effect since its execution.

On June 6, 1989, NBW lent Opton $250,000 in exchange for a Commitment Letter and a Master Promissory Note, dated October 10, 1989 (collectively the "Note"). Opton subsequently defaulted on the Note by failing to make the required payments. In a letter dated May 15, 1990, NBW demanded from Opton $249,240, the total amount then due on the Note. NBW also sent notices, dated May 15, 1990, to appellant and to Stephen and Mallary Tytel, indicating that if the amount due on the Note was not paid by May 18, 1990, "NBW [would] exercise all of its rights and remedies under the Guarant[ies] against [them]." Notwithstanding NBW's demand letter, Opton failed to pay the Note in full, and the guarantors, appellant and Stephen and Mallary Tytel, failed to make payments under the terms of their guaranties.

On July 17, 1990, NBW sued Opton and the Tytels, seeking from all defendants, jointly and severally, $225,571.06 consisting of the unpaid principal balance of $193,222.10, interest through July 9, 1990, totaling $2,508.56, late charges of $418.09, and attorneys' fees aggregating $29,422.31.

---

* Judge WAGNER was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

** JUDGE FERREN was Acting Chief Judge at the time of argument. His status as an Associate Judge resumed on June 14, 1994.

On August 10, 1990, the Office of the Comptroller of the Currency declared NBW insolvent, closed the bank, and appointed appellee FDIC as the bank's receiver. Claiming it was the "real party in interest," FDIC moved to be substituted as the plaintiff in lieu of NBW. The trial court granted this unopposed motion.

Opton did not file an answer to the NBW/FDIC complaint, and, as a result, the trial court entered a default judgment against Opton for $225,571.06, the full amount due. Stephen and Mallary Tytel filed an answer alleging two defenses: lack of consideration and lack of corporate authority. Appellant answered with the following defenses: (1) he never delivered the executed guaranty to NBW; (2) he could not be held liable as guarantor because the underlying Note was invalid, given the facts that Opton's president, Stephen Tytel, lacked mental capacity and corporate authority to execute the Note; (3) appellant received no consideration for his guaranty.

FDIC moved for summary judgment against the Tytels. Appellant opposed the motion, arguing that there were genuine issues of material fact as to the defenses alleged in his answer (enumerated above) and, in addition, as to whether NBW or FDIC had impaired the loan collateral and thereby discharged appellant's obligation. Stephen and Mallary Tytel did not oppose FDIC's summary judgment motion.

On October 20, 1992, the trial court granted summary judgment against all three Tytels, and, on April 9, 1993, the court entered judgment, "jointly and severally against Howard Tytel, Mallary Tytel and Stephen Tytel in the amount of [$280,639.21]." Appellant alone filed a notice of appeal.

## II.

▮ Super.Ct.Civ.R. 56(c) (1993) requires the trial court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "The moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law." *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983). To survive a summary judgment motion, "the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Nader v. Toledano,* 408 A.2d 31, 42 (D.C.1979) (quoting *International Underwriters, Inc. v. Boyle,* 365 A.2d 779, 782 (D.C.1976)), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). This means the court must deny summary judgment if the offered evidence and related inferences would permit the factfinder, applying the appropriate burden of proof, to find for the nonmoving party. *See id.* Furthermore, "[o]ur standard of review of a trial court order granting a motion for summary judgment is the same as that applied by the trial court when it considers the motion in the first instance." *Government Employees Ins. Co. v. Group Hospitalization Medical Servs., Inc.,* 602 A.2d 1083, 1086 (D.C.1992). With these principles in mind, we turn to appellant's contentions.

### A. Non–Delivery Defense

Appellant contends that the trial court erred in granting summary judgment as to his defense that he never delivered an executed guaranty to NBW. More specifically, although appellant admitted in his answer that he had signed the unconditional guaranty on October 19, 1988, appellant argues that, despite this admission, his affidavit and several NBW documents—submitted to the trial court with appellant's opposition to FDIC's motion for summary judgment—established a genuine issue of material fact as to whether appellant had delivered the guaranty to the bank. According to the affidavit, appellant signed the guaranty and gave it to his brother but never authorized his brother to deliver the executed guaranty to NBW.

▮ FDIC contends that summary judgment was appropriate because *D'Oench, Duhme & Co.,* 315 U.S. at 447, 62 S.Ct. at 676, and *D'Oench's* statutory counterpart, 12

U.S.C.A. § 1823(e), barred the non-delivery defense. FDIC argues, more specifically, that the *D'Oench* rule entitled FDIC "to rely, to the exclusion of any extraneous matters, on the official bank records that set forth the rights and obligations of the bank and those to whom the bank lends money." According to FDIC, appellant's unqualified guaranty was in NBW's records; thus, appellant's non-delivery defense was ineffectual as a matter of law, based as it was, solely on an alleged oral agreement between appellant and his brother, not reflected in the guaranty itself, conditioning delivery on appellant's later authorization.

The trial court concluded that appellant's non-delivery defense failed for a different reason: FDIC was a holder in due course of appellant's guaranty. We do not address the trial court's reasoning because we agree with appellee's contention that *D'Oench* and 12 U.S.C.A. § 1823(e) preclude the non-delivery defense. *See Max Holtzman, Inc. v. K & T Co.*, 375 A.2d 510, 513 n. 6 (D.C.1977) ("An appellate court may sustain a correct judgment on a ground different from that adopted by the trial court.").[1]

In *D'Oench*, FDIC sued the maker of a note which FDIC had received as collateral for an FDIC loan to the original obligee bank. The maker alleged in defense that it had given the note to the obligee bank without consideration and, further, with the understanding that the bank would never sue on the note. FDIC argued that the maker could not assert those defenses because, if they were to be honored, the very existence of the facially unconditional note in the bank's records would amount to a misrepresentation likely to deceive the bank's creditors, state banking authorities, and FDIC itself. The Supreme Court agreed with

FDIC, holding that the maker was estopped from defending against FDIC on the grounds alleged. The Court concluded:

> Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.

*D'Oench*, 315 U.S. at 459, 62 S.Ct. at 680. The Court added that, in executing the note, the maker effectively had given the bank permission "to treat the note as genuine for purposes of examination at the hands of the public authorities as well as for its general banking activities." *Id.* at 460, 62 S.Ct. at 680.

In 1950, reflecting *D'Oench*, Congress enacted 12 U.S.C.A. § 1823(e), which provides with respect to FDIC:

> **(e) Agreements against interests of Corporation [*i.e.*, FDIC]**
>
> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be

---

1. In the trial court, FDIC relied primarily on the argument that FDIC was a holder in due course of appellant's guaranty and therefore was not subject to appellant's non-delivery defense. Neither *D'Oench* nor 12 U.S.C.A. § 1823(e) is mentioned by name in FDIC's trial court pleadings or motions. We conclude, nonetheless, that FDIC sufficiently raised the *D'Oench* doctrine in the trial court to preserve that argument for appeal. FDIC's proposed summary judgment order, attached to its motion for summary judgment, states, in accordance with the principles enunciated in *D'Oench:*

FDIC, as receiver for NBW, is entitled to rely on the failed institution's records to determine its assets and liabilities.

Appellant, moreover, appears to have conceded that the *D'Oench* doctrine was before the trial court, for appellant's brief states:

The trial judge erroneously held that the FDIC was a holder in due course of [appellant's] guaranty because for whatever reason she merged the federal holder in due course doctrine with the distinct statutory protections in 12 U.S.C. § 1823(e), codifying the estoppel doctrine announced in *D'Oench*.

reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

"One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987); *see also Falk v. Mt. Whitney Sav. & Loan Ass'n*, 5 F.3d 347, 350 (9th Cir.1993) ("The *D'Oench, Duhme* doctrine and section 1823, its statutory counterpart, implement a 'federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans.'") (quoting *D'Oench, Duhme & Co.*, 315 U.S. at 457, 62 S.Ct. at 679–80). In sum, "12 U.S.C. § 1823(e) sets forth mandatory criteria for agreements that tend to diminish the [FDIC's] interests in any asset in receivership. The statutory provision entitles the [FDIC] to rely, to the exclusion of extraneous materials, on the books and records of a financial institution." *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 549 (D.C.1994).

■ Pursuant to Section 1823(e), an "agreement" that is not reflected on the face of the asset and "tends to diminish or defeat" FDIC's interest in that asset is enforceable only if four conditions are satisfied: the agreement is (1) in writing, (2) had been executed by the bank, and by any person claiming an adverse interest thereunder (including the obligor), contemporaneously with the acquisition of the asset by the bank, (3) had been approved by the bank's board or loan committee, as reflected in the board's or committee's minutes, and (4) had been contained in the bank's official records continuously since execution of the agreement. *See* 12 U.S.C. § 1823; *Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 4 F.3d 1490, 1499

(9th Cir.1993) ("side agreement" enforceable as part of loan documents only if "side agreement" meets requirements of § 1823(e)); *Talmo v. Federal Deposit Ins. Corp.*, 782 F.Supp. 1538, 1540 (S.D.Fla.1991) ("These criteria are stringent and failure to show satisfaction of each and every requirement is fatal to any claim or defense."); *Federal Deposit Ins. Corp. v. Manatt*, 688 F.Supp. 1327, 1329 (E.D.Ark.1988) ("If any one of the ... requirements of § 1823(e) is shown to be unsatisfied, any side agreement ... is not enforceable against the FDIC."), *aff'd*, 922 F.2d 486 (8th Cir.), *cert. denied*, 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991).

If the "agreement" that "tends to diminish or defeat" the FDIC's interest in the asset is evidenced on the face of the document, then § 1823(e) is inapplicable because FDIC, in relying on the books and records of the failed financial institution, is automatically on notice of the "agreement." *See Howell v. Continental Credit Corp.*, 655 F.2d 743, 746–47 (7th Cir.1981) (§ 1823 inapplicable where document facially manifests agreement that serves as defense); *Federal Deposit Ins. Corp. v. Amberson*, 676 F.Supp. 777, 779 (W.D.Tex.1987) ("Since [agreement] was included in the note itself, § 1823(e) would seem to be inapplicable."); *cf. Federal Deposit Ins. Corp. v. Gardner*, 606 F.Supp. 1484, 1488 (S.D.Miss.1985) ("Since the written agreement ... is not evidenced in the subject promissory note, § 1823(e) is applicable.").

Appellant argues that *D'Oench* and 12 U.S.C. § 1823(e) do not bar his non-delivery defense. Although his alleged agreement with Opton's president, his brother Stephen Tytel, was not reflected on the face of the guaranty, appellant proffers written evidence of record from NBW's files establishing that the bank was well aware that appellant had not delivered an unlimited guaranty. This proffer is irrelevant; appellant's agreement with his brother could not be valid against FDIC unless it met all § 1823 criteria. *See Langley*, 484 U.S. at 94, 108 S.Ct. at 402–03 ("knowledge of the misrepresentation by the FDIC prior to [the FDIC's] acquisition of the [asset] is not relevant to whether § 1823(e)

applies"); *Talmo,* 782 F.Supp. at 1540 (fact that "FDIC received written evidence or notice of the alleged agreement is irrelevant. The only relevant inquiry is whether the criteria of § 1823(e) have been satisfied").

Appellant's guaranty—which on its face purports to guarantee all Opton debts to NBW unconditionally—was among the defunct bank's records and is currently an asset of FDIC, acting as receiver for NBW. Under *D'Oench* and § 1823(e), FDIC is entitled to "rely on a bank's records in evaluating the worth of the bank's assets." *Langley,* 484 U.S. at 91, 108 S.Ct. at 401. Thus, in the absence of an "agreement" in appellant's guaranty that "tends to diminish or defeat" the FDIC's interest *and* meets the four criteria of § 1823(e), FDIC may enforce the guaranty according to its terms. We turn, accordingly, to the question whether appellant's defense of non-delivery is an "agreement" that meets § 1823(e) criteria.

Appellant proffered in his affidavit, attached to his opposition to FDIC's summary judgment motion, that although he had signed the guaranty and delivered it to Stephen Tytel, he never had authorized its delivery to the bank. [R. 178] Appellant's affidavit also avers that the bank had sent him a "replacement guaranty," which he never had executed; that in May 1990, a year and a half after execution of the unconditional guaranty, an NBW officer had telephoned appellant "to request that [he] guarantee the amounts claimed in the Complaint in this case"; and that appellant had refused to sign the requested guaranty. [R. 178] In addition to his affidavit, appellant submitted to the trial court three bank documents: (1) a letter, dated October 27, 1988 (eight days after appellant's guaranty purportedly had been executed) from NBW to appellant requesting appellant to sign and return a "replacement guaranty"; (2) an NBW Loan Review, dated April 11, 1990, listing as collateral an unlimited guaranty of Stephen and Mallary Tytel and a "Guaranty of up to $150M of Howard Tytel"; [2] and (3) a memorandum, dated May 10, 1990, from Ronald Pizzi, an NBW officer, to NBW's files describing a telephone conversation between Pizzi and appellant in which appellant had stated he would "absolutely not" guaranty "the entire amount of the Opton, Inc. loan." [3]

Although appellant's proffered evidence appears to establish "agreements" that "tend to diminish or defeat" the FDIC's interest in appellant's guaranty, those "agreements" do not comprise a valid defense against FDIC because they do not meet § 1823(e) criteria. First, appellant's alleged "agreement" with his brother—that his brother would not deliver the executed guaranty to the bank without appellant's authorization—"fails to satisfy even the first prong of Section 1823(e) because [the agreement] is not written." *CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90, 94 (E.D.Va.1992) (*D'Oench* barred guarantor's defense that lender breached oral promise). *See also Central W. Rental Co. v. Horizon Leasing,* 967 F.2d 832, 840–41 (3rd Cir.1992) (guarantor's attempts "to use oral, undocumented agreements" that their guaranty applied only to initial $300,000 loan, and not to subsequent $1,000,000 loan, "barred by the *D'Oench* doctrine"); *Federal Deposit Ins. Corp. v. Newhart,* 892 F.2d 47, 49 (8th Cir. 1989) (obligor of note cannot defend against FDIC on basis of oral agreement); *Federal Deposit Ins. Corp. v. Waldron,* 630 F.2d 239, 241 (4th Cir.1980) (alleged oral agreement between guarantors and bank's vice-president modifying original obligation barred by § 1823(e)); *Federal Deposit Ins. Corp. v. Hudson,* 758 F.Supp. 663, 671 (D.Kan.1991) ("oral side agreements . . . cannot be invoked by debtors to avoid their liabilities against the FDIC even if such defenses would have been viable against the original creditor-financial institution").

Similarly, appellant's alleged telephone conversation with the bank, in which the bank asked appellant to sign and return the "replacement guaranty," also fails to satisfy even the first requirement of § 1823(e) because it was never reduced to writing. *See*

---

**2.** The NBW Loan Review states that "[f]urther extension will be predicated on Howard Tytel's full guaranty and receipt of updated financial information."

**3.** According to the memorandum, appellant "acknowledged his guaranty and said he would honor it, but again, refused to increase it to guaranty the entire loan."

*Gulf Federal Sav. & Loan Ass'n v. Mulderig,* 742 F.Supp. 358, 361 (E.D.La.1989) (guarantor's allegation of lack of valid delivery of notes as result of failure of mortgage to contain alleged secondary oral agreement to extend loan was not defense making guarantees unenforceable); *Federal Deposit Ins. Corp. v. Powers,* 576 F.Supp. 1167, 1169 (N.D.Ill.1983) (oral conversations between guarantors and bank officials not admissible to prove defense of failure to deliver to guarantors consideration, as required by terms of agreement), *aff'd,* 753 F.2d 1076 (7th Cir. 1984).

Furthermore, although the bank documents submitted to the trial court suggest that the bank never received appellant's unconditional, unlimited guaranty, these documents fail to satisfy at least the second and third requirements of Section 1823(e), since they were not executed contemporaneously with the guaranty and they were not approved by NBW's board of directors or loan committee and were not reflected in appropriate minutes. *See Federal Deposit Ins. Corp. v. Virginia Crossings Partnership,* 909 F.2d 306, 309 (8th Cir.1990) (bank memoranda purporting to limit personal liability of guarantors to $42,000, rather than full $210,000 loan they originally agreed to guaranty, were ineffective against FDIC because they did not satisfy requirement of contemporaneous execution with underlying loans); *Manatt,* 688 F.Supp. at 1330 (alleged agreement with bank was invalid against FDIC because agreement was not executed contemporaneously with bank's acquisition of asset); *Gardner,* 606 F.Supp. at 1488 ("side agreement itself must be referenced or its existence must be affirmatively and directly acknowledged by the Bank's board of directors or loan committee, and such reference to, or acknowledgement of the side agreement must be specifically reflected in the minutes of the board or committee").

In sum, appellant has not presented evidence tending to establish his non-delivery defense, *i.e.,* that he never delivered the guaranty to the bank, meeting the criteria of 12 U.S.C. § 1823(e) and *D'Oench.*

### B. Incapacity Defense

Appellant contends the trial court erred in granting summary judgment as to his defense that Stephen Tytel lacked the mental capacity and corporate authority to make the Note. More specifically, appellant asserts that the affidavit he submitted to the trial court provided evidence that, based on appellant's personal observations, Stephen Tytel was "virtually insane" when he executed the Note and that appellant, in his capacity as Opton's secretary, did not perform the required corporate acts necessary to confer on Stephen Tytel the corporate authority to make the Note.

The trial court ruled that "Stephen Tytel's mental incapacity is irrelevant on the question of summary judgment against Howard Tytel [appellant]," and that "whether Stephen Tytel technically had the corporate authority to sign the underlying [Note] of Opton, Inc. is a defense that can only be asserted by [Opton]." We agree.

■ A guarantor does not enjoy the same limitations on liability as the maker of the underlying note has available. "While the *extent* of a guarantor's liability certainly does not exceed the maker's underlying obligation, the actual *liability* of the guarantor may exist even when the maker himself [or herself] is not liable on the note." *United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249, 1252 (5th Cir.1985). If the underlying obligation is not void—*e.g.,* for illegality—but is unenforceable against the debtor only because of a defense that is personal to the debtor, "the guarantor may not successfully set up this [defense] to defeat an action by the creditor or obligee seeking to hold the guarantor liable on the contract of guaranty." 38 Am.Jur.2d *Guaranty* § 52 (1966); *see also Little Joe Trawlers,* 776 F.2d at 1252 ("Generally, an unconditional guarantor is liable for payment even though the holder of the note cannot enforce the claim against the principal obligor (the maker), *unless* the claim against the principal obligor is void for illegality."); 38 C.J.S. *Guaranty* § 88 (1943) ("guarantor cannot assert as a defense matters affecting the liability of the principal which are personal to the principal").

"The following personal defenses of the principal obligor ... cannot be raised by [the guarantor]: Usury, Breach of warranty, Incapacity of principal, Statute of limitations, Defective goods, Forgery of maker's signature, Carelessness of bank in issuing loan, Claim of sham agreement, Mistake, impossibility, or frustration of purpose." *Continental Illinois Nat'l Bank and Trust Co. v. Windham*, 668 F.Supp. 578, 584–85 (E.D.Tex. 1987) (citations omitted); *see also Little Joe Trawlers*, 776 F.2d at 1252 (personal defenses of debtor unavailable to guarantor include forgery of maker's signature, usury, ultra vires, statute of limitations).

We conclude that Stephen Tytel's, *i.e.*, the maker's, alleged mental incapacity and lack of corporate authority to execute the Note are defenses personal to Stephen Tytel and to Opton that appellant cannot assert to escape liability on his facially unconditional guaranty.[4] Appellant does not contend that the underlying Note was void, and appellant, therefore, is not entitled to use the maker's personal defenses against the obligee. We therefore affirm summary judgment in FDIC's favor on the issues of appellant's alleged mental incapacity and lack of corporate authority.[5]

## C. Lack of Consideration

Appellant also contends that summary judgment was improper because he raised a genuine issue of material fact as to lack of consideration supporting his guaranty. In particular, appellant argues that he executed his guaranty, dated October 19, 1988, after NBW's first loan to Opton in 1987, and that the guaranty, therefore, was invalid because it "was not supported by new consideration, separate and independent from the original contract."

We note, first, that extension of credit to a debtor is sufficient consideration for a guaranty by a third party who benefits, however indirectly, from the loan to the debtor. *See In re Xonics Photochemical, Inc.*, 841 F.2d 198, 201 (7th Cir.1988); *Conoco, Inc. v. Inman Oil Co.*, 774 F.2d 895, 909 (8th Cir.1985); *United States v. Blue Dolphin Assocs., Inc.*, 620 F.Supp. 463, 466 (S.D.Ga. 1985); *Seitzinger's, Inc. v. National Bank of Washington*, 490 F.Supp. 340, 342 (D.D.C. 1980). Appellant, a corporate officer of Opton, does not claim he failed to benefit, even indirectly, from the loan to Opton underlying his guaranty. Rather, appellant claims that his 1988 guaranty, postdating the first loan to Opton, did not extend to the second loan underlying the Note because there was no consideration applicable to him for that second loan.

We do not agree. The trial court concluded that appellant's failure to execute a second guaranty after Opton had received the loan and executed the Note was irrelevant, be-

4. The trial court concluded that FDIC "retains the status of holder in due course of the alleged personal guaranty," and that this status is relevant because "a holder in due course is not subject to so-called 'personal defenses' but only to 'real defenses,'" as defined by the Uniform Commercial Code. Our conclusion that mental incapacity and lack of corporate authority are "personal defenses," which a guarantor cannot invoke against the obligee of the underlying note, is unrelated to the Uniform Commercial Code's characterization of incapacity as a "real defense," which can be asserted by the maker of a negotiable instrument or "any [other] party to the instrument," D.C.Code § 28:3–305(2) (1991), against even a holder in due course. *See* D.C.Code § 28:3–305(2)(b) (1991) (holder in due course of "instrument" is subject to incapacity defense). Even assuming, however, that FDIC was a holder in due course of appellant's guaranty and therefore was subject to real defenses under the Uniform Commercial Code, appellant could not assert as a real defense against FDIC

his brother's mental incapacity to execute the underlying Note. The real defense of incapacity under the Uniform Commercial Code is only available to "any party to the instrument." D.C.Code § 28:3–305(2). Appellant, as guarantor, is not a party to the instrument (the Note) at issue here and therefore is not entitled to assert his brother's incapacity.

5. We also note that appellant waived any defense based on invalidity of the underlying note because the guaranty states:

No invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned. *See Continental Illinois Nat'l Bank & Trust Co. v. Stanley*, 606 F.Supp. 558, 562–63 (N.D.Ill.1985) (plain language of guaranty waived guarantor's defenses based on invalidity of underlying note).

cause appellant's earlier guaranty expressly covered all debts of Opton "now and hereafter existing." The court specifically found that "the [appellant's] original guaranty clearly included the obligation to pay all future debts incurred by Opton, Inc. without reference to particular transactions that might be concluded at a later time and without reference to any renegotiation of the basic loan that underlies this lawsuit." The court's ruling is sustainable on the facts and on the law.

Appellant's guaranty expressly acknowledged that it had been offered "[i]n consideration of financial accommodations given or to be given or continued to Opton." If a guaranty expressly covers all future debts of the borrower to the bank, "there is no requirement of a new consideration to the guarantors for each new debt." *Federal Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988) (guaranty covered "any and all existing and future indebtedness and liability of any kind ... from [debtor] to the Bank"); *see Blue Dolphin Assocs., Inc.*, 620 F.Supp. at 466.[6]

In sum, appellant's guaranty covered all liabilities of Opton to NBW "now or hereafter existing," based on "consideration of financial accommodations given or to be given or continued to Opton." His guaranty, therefore, did not require new consideration for loans made to Opton after execution of the guaranty. Appellant cannot survive summary judgment on this issue.

### D. Impairment of Collateral

Finally, appellant contests summary judgment because the bank "wrongfully impaired the collateral for [appellant's] guaranty."[7] [Appellant's brief at 10] More specifically, appellant argues that NBW's records show that Opton had had over $100,000 in cash when it defaulted on the loan and that NBW had failed to exercise its right to these assets. According to appellant, NBW's failure to pursue Opton's assets impaired the collateral, as well as appellant's right of subrogation, and thereby discharged appellant's obligation under the guaranty.

The language of appellant's guaranty specifically waived this "impairment of collateral" defense. Appellant's guaranty states:

> [W]ithout impairing or releasing the obligations of the undersigned hereunder, [the Bank may] ... (2) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the liabilities hereby guaranteed ...; (3) *exercise or refrain from exercising any rights against the Borrower or others* (including the undersigned) or otherwise act or refrain from acting;

---

6. Appellant's guaranty can be characterized as a unilateral contract, in which

> the promisor (appellant) makes his promise (the guaranty) in exchange for a proposed act (the loan to the corporation). So long as that act remains unperformed, the promisor is not bound. The act which the offer seeks, however, is the consideration for the promise. Performance of the act constitutes acceptance of the offer, and at that point a contract comes into being.

*King v. Industrial Bank of Washington*, 474 A.2d 151, 156 (D.C.1984). As the court stated in *King*,

> until the loan was made, there was no consideration for the guaranty and thus no contract. The making of the loan, however, was consideration for appellant's promise, and as soon as the loan was made, the contract became binding. Since there is no dispute that the loan was made, appellant cannot validly claim either lack or failure of consideration.

*Id.* Unilateral contract analysis therefore explains why NBW's $250,000 loan to Opton, following appellant's guaranty, was consideration for that guaranty.

7. Although appellant argued in his opposition to FDIC's motion for summary judgment that NBW had impaired the collateral, appellant had not included this defense in his answer to NBW's original complaint, and the trial court did not address it in its summary judgment order. Arguments presented to the trial court, on a motion for summary judgment, not set forth earlier in the pleadings, are not necessarily excluded from trial court consideration. *See In re Zweibon*, 184 U.S.App.D.C. 167, 172 n. 20, 565 F.2d 742, 747 n. 20 (1977); *Hayes v. Philadelphia Transp. Co.*, 312 F.2d 522, 523 (3d Cir.1963); *Seaboard Terminals Corp. v. Standard Oil of New Jersey*, 104 F.2d 659, 660 (2d Cir.1939); *National Agric. Chems. Assoc. v. Rominger*, 500 F.Supp. 465, 473 (E.D.Cal.1980). We therefore treat this issue as preserved for appeal.

(Emphasis added.) In *Knight v. Cheek,* 369 A.2d 601 (D.C.1977), the court held that such a stipulation "constitute[d] consent by guarantors that release of the principal debtor would not discharge the guarantors." *Id.* at 603 (guaranty provided that guarantor "consents that holder may, without affecting [his or her] liability, compromise or release, by operation of law or otherwise, any rights against and grant extensions of time of payment to buyer and other obligors or guarantors"); *see also Union Planters Nat'l Bank v. Markowitz,* 468 F.Supp. 529, 533 (W.D.Tenn.1979) (provisions in guaranty "make the guaranty binding on the guarantors even if [creditor] acted negligently" in "not taking certain steps which might have substantially reduced [guarantor's] liability"). We therefore reject appellant's impairment of collateral defense and affirm summary judgment for FDIC on this issue as on all others.

*Affirmed.*