**GUNNELL CONSTRUCTION CO., Inc.,**
Appellant,

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY,** Appellee.

No. 19937.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 10, 1966.

Decided Dec. 29, 1966.

Petition for Rehearing En Banc and for Rehearing before the Division Denied Feb. 8, 1967.

Tamm, Circuit Judge, dissented.

Mr. Harry L. Ryan, Jr., Washington, D. C., for appellant.

Mr. John F. Myers, Washington, D. C., with whom Mr. Kahl K. Spriggs, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY and TAMM, Circuit Judges.

FAHY, Circuit Judge:

Gunnell Construction Company, Inc., appellant, subcontracted to Greene & Dyer Contracting Corporation a part of the work called for by appellant's prime contract with the District of Columbia to construct certain facilities. The construction work is referred to as the Blue Plains project. Hartford Accident and Indemnity Company, appellee, as surety, bonded Greene & Dyer to Gunnell, the condition for recovery on the bond reading as follows:

> Now, Therefore, the condition of this obligation is such that, if the Principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the Obligee from all costs and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse and repay the Obligee all outlay and expense which the Obligee may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect.

When Greene & Dyer did not complete the work under the subcontract, a dispute arose as to who was in breach, and Greene & Dyer brought suit in our District Court against Gunnell. Pend-ing that litigation Greene & Dyer was adjudicated to be bankrupt. Gunnell moved the District Court to dismiss Greene & Dyer's suit and this was done with leave to amend. Greene & Dyer then filed an amended complaint, and Gunnell filed a suggestion of bankruptcy with the District Court and subsequently answered Greene & Dyer's complaint, alleging that it was the latter who breached the contract. Thereafter Gunnell also filed a claim in the bankruptcy proceedings. The respective claims in those proceedings included but were not limited to those which grew out of the Blue Plains project. A compromise of all the claims between Gunnell and the bankrupt estate was reached and approved by the referee. In the compromise Gunnell reserved any right it might have against Hartford as surety for Greene & Dyer, and on its part Hartford lodged an objection to approval by the referee of the compromise.[1] Following this compromise a praecipe, signed by the respective attorneys of Greene & Dyer and Gunnell, was filed in the District Court action between these two parties. The praecipe reads as follows:

> The Clerk of said Court will please enter this cause as settled by compromise and dismissed with prejudice as to all claims, setoffs, and counterclaims.

■■ Although Gunnell had filed no counterclaim any it might have had against Greene & Dyer was thus disposed of, for it would be a compulsory counterclaim required to be pursued in the action thus settled. Rule 13(a), Fed. R.Civ.P. The disposition of the litigation pursuant to the praecipe was a mutual discharge of the claims of the parties growing out of the Blue Plains project. As stated by the District Court

---

1. The intention of the principal, Greene & Dyer, and of the obligee, Gunnell, in making an agreement to which Hartford, the surety, was not a party, is not a controlling factor in determining the legal rights of Gunnell against Hartford. The reservation by Gunnell, in its compromise with Greene & Dyer, of such rights as Gunnell might have against Hartford, does not create rights. The steps Gunnell deemed it wise to take on its own behalf in its compromise with Greene & Dyer left Gunnell with no rights against Hartford insofar as the Blue Plains project is concerned.

in its opinion filed in granting summary judgment for Hartford:

> [T]he dismissal "with prejudice as to all claims, setoffs and counterclaims" was an adjudication on the merits of all matters that were or could have been contested there,[9] pre-

9. The praecipe was a "stipulation of dismissal" within F.R.Civ.P. 41(a) (1). Burns v. Fincke, 90 U.S.App.D.C. 381, 382, 197 F.2d 165, 166 (1952), and the provisions of that rule extend to counterclaims. F.R.Civ.P. 41(c). * * * See also * * * Broder v. Hartford Accident & Indemnity Co., 106 F.Supp. 343, 346 (D.D.C.1952).

cluding forever their relitigation between the parties—the principal on the bond in suit and its obligee.

■ On the undisputed facts, outlined above, we affirm the order of the District Court in granting Hartford's motion for summary judgment. *Simpson, Suretyship,* 296 (1950); *Stearns, Suretyship,* 146 (4th ed. 1934). The compromise in the bankruptcy proceedings does not stand alone in determining the relationship between Gunnell and Hartford. The compromise was followed by the unconditioned praecipe filed in the District Court action, which unqualifiedly discharged Greene & Dyer in respect of the Blue Plains project, thus by operation of law discharging its surety in connection with the same matter.[2] In directing the clerk to enter the cause "as settled by compromise" the praecipe to no degree detracted from the legal effect of its unconditioned dismissal "with prejudice as to all claims, setoffs, and counterclaims."

Affirmed.

2. Appellant requests us to apply the "joint contractors" provisions of D.C.Code § 16–901 (1961) so as to find that Hartford was in effect a co-principal with Greene & Dyer, and Gunnell accordingly could bring an independent action against Hartford without reference to its action against Greene & Dyer. Section 16–901 provides that contracts "entered into by two or more persons * * * shall for the purposes of suit thereupon be deemed joint and several." Appellant reads § 16–901 with § 16–906, which provides generally that a compromise against one

TAMM, Circuit Judge (dissenting):

I believe that the majority's disposition of this case is contrary to both the intent of the principal and obligee on the bond and to the general principles of suretyship law as applied to the peculiar facts of this case. I do not believe that the principal and obligee intended by their settlement to release the surety, nor do I believe that the principles of suretyship law require that the surety should be released.

My brethren hold that the settlement of Greene & Dyer's claim against Gunnell effected a release of the surety, Hartford, despite the attempted reservation of rights against Hartford. The fact that the settlement was negotiated after Greene & Dyer was adjudged a bankrupt is ignored, as are the terms of the settlement itself. Since the fact of the intervention of the bankruptcy proceeding is, in my view, crucial to the proper disposition of this case, I believe it necessary to consider at some length just precisely what went on in the proceeding.

At the time of the bankruptcy proceeding, there were four claims in litigation between Greene & Dyer and Gunnell, one of which claims involved the Blue Plains job the subject of Hartford's bond in the present action. The trustee in bankruptcy negotiated a settlement with counsel for Gunnell of the four claims. Settlement was made outright on one claim, the agreement being that Gunnell would pay Greene & Dyer (*id est,* the trustee) $1,750.00. The other three claims (one of which was the Blue Plains job) were settled together, Gunnell agreeing to pay the trustee $15,000.00. In these three

joint debtor does not discharge another joint debtor. The statute refers, however, to "two or more persons" entering into a contract. Although the construction contract of Greene & Dyer was incorporated by reference into the Hartford bond, Hartford was not a signatory to the original contract. Even though the surety bonds both payment and performance by the principal, we are unable to accept appellant's argument that the statute was intended to make a co-principal out of a surety.

suits, Greene & Dyer was alleging that Gunnell owed it approximately $102,000.-00 on the three jobs; however, Gunnell's proof of claim in the bankruptcy proceeding indicates claims against Greene & Dyer on these three jobs of approximately $130,000.00.

As noted, the trustee in bankruptcy negotiated the settlement on behalf of Greene & Dyer. In his "Petition to Confirm Compromise of Pending Litigation and Disputed Claims," the trustee stated to the Referee in Bankruptcy that:

"your petitioner commenced negotiations with Harry Ryan, Esquire, attorney for Gunnell Construction Co., Inc. and effected a blanket settlement of all litigation for the payment of the sum of $15,000.00 by the Gunnell Construction Co., Inc. to the Trustee in Bankruptcy and the withdrawal of its proof of claim filed herein *upon the conditions that * * * (2)* although all litigation between the bankrupt and Gunnell Construction Co., Inc. would be settled and ended, the said Gunnell Construction Co., Inc., would not waive its right to claim against the payment and performance bond of the bankrupt posted through the Hartford Accident and Indemnity Co. for the Blue Plains job which said claim is in the approximate amount of $20,000.00." (Emphasis added.)

In the "Order Confirming Compromise of Pending Litigation and Disputed Claims," the Referee in Bankruptcy specifically stated:

"1. Civil Actions 3482–59, 650–60 and 2792–60 relating to the House Office Building, Children's Center at Laurel, Maryland and the Blue Plains Sewage Treatment Plant will be dismissed, both complaint and counterclaim, for the payment of $15,000.00 to the Trustee, reserving to Gunnell Construction Co., Inc., any right it may now have to claim against the payment and performance bond of the bankrupt corporation on the Blue Plains Sewage Treatment Plant and the right to subrogation, following formal proceedings therefore to the extent that they have been caused to ex-pend funds to satisfy bonded claims by creditors of the bankrupt corporation having properly filed claims in this proceeding."

After securing the agreement of counsel for Gunnell to the settlement, the Trustee then confirmed the settlement with counsel for Greene & Dyer, who also agreed to its terms, including the reservation of Gunnell's rights against Hartford on the Blue Plains job. The trustee quoted counsel for Greene & Dyer to the effect that he agreed with "your petitioner in the feeling that said offer was fair, reasonable and in the best interests of the bankrupt estate." It was only after all of the foregoing that the praecipe noted by the majority was entered in the Blue Plains case. The language of the praecipe takes on a different coloration when illumed by the above-quoted portions:

"The Clerk of said Court will please enter this cause *as settled by compromise* and dismissed with prejudice as to all claims, setoffs, and counterclaims." (Emphasis added.)

It is clear, then, that the agreement and understanding among counsel for Gunnell, counsel for Greene & Dyer and the trustee in bankruptcy, as confirmed by the referee in bankruptcy, was that Gunnell should reserve its rights against Hartford. Moreover, the fact that counsel for Greene & Dyer approved the compromise containing the reservation of rights against its surety on the Blue Plains job at least implies (if it does not in fact conclusively establish) that Greene & Dyer was, in fact, in breach of that contract. In view of the fact that Hartford would have a right of subrogation against Greene & Dyer if it had to pay Gunnell, counsel for Gunnell would hardly have agreed to the compromise with reservation unless Greene & Dyer was, in fact, liable on the Blue Plains contract.

In spite of the clearly manifested intent of the parties to the contrary, the District Court, now affirmed by the majority, refused to give effect to the reservation. The majority of this panel states that

"[t]he compromise was followed by the unconditioned praecipe filed in the District Court action, which unqualifiedly discharged Greene & Dyer in respect of the Blue Plains project, thus by operation of law discharging its surety in connection with the same matter." *Supra,* p. 280 (footnote omitted)

The praecipe can only be considered "unconditioned" (as the majority states) by completely ignoring all that went on in the bankruptcy proceeding which provided the *raison d'etre* for the praecipe in the first place. Moreover, the majority, *sub silentio,* passes over the reservation question, simply holding that the discharge of the principal discharges the surety.

I believe that in so doing the majority ignores a respectable body of law which gives effect to reservations such as the one present here and that, in any event, those cases and authorities which would hold to the contrary are not apposite here. Although it is well settled that the obligee's release of the principal or his agreement to extend time to the principal discharges the surety (Stearns, *Suretyship,* § 102, p, 146 (2d ed. 1934); Simpson, *Suretyship,* § 63, p. 296 (1950)), it is equally well settled that the surety is not released by a release or extension of time to the principal by the obligee if the obligee *reserves his rights* against the surety. (Stearns, *supra,* § 92, p. 131; Simpson, *supra,* § 64, p. 302; Restatement, Security, § 122(b), comment (d)). It is true, as noted by the District Court, that the reservation doctrine as applied to sureties has been the subject of criticism (see, *e. g.,* 2 Williston Contracts, § 339 (3d ed. 1959)) on the basis that the release of the principal "varies the risk" of the surety without its consent and the surety should therefore be released to the extent its risk is, in fact, varied. Such variation of risk is found to exist where the release of the principal impairs or destroys the surety's right of indemnity, subrogation or exoneration against the released principal.

In the instant case, the District Court, although recognizing the general rule giving effect to reservations, held that the settlement here effected a complete release of the surety because it completely abrogated the rights of the surety as against the principal which, of course, constituted a variation of the surety's risk. However, I believe that close analysis of the circumstances of the settlement itself and the actions of the surety at that time will demonstrate that Hartford could easily have protected itself against any possible variation in its risk but that it failed to do so.

Here the principal had been adjudged a bankrupt prior to the settlement. Although the surety had no notice of the settlement negotiations, it was informed of its final terms and was on notice of the possible effects such negotiations would have upon its rights in the matter. The surety could have protected itself at that point by the simple expedient of filing a claim for contingent liability against the bankrupt estate for the amount of the bond, thereby preserving its rights against the principal. Hartford could have gone even further to protect itself. Although it did make an oral objection to the petition of Greene & Dyer's trustee in bankruptcy, it failed to file any formal objection thereto. If it had filed such objection, Hartford could have petitioned the court to make a judicial determination as to the extent of the liability, if any, of Greene & Dyer on the Blue Plains job as determined in the settlement. Hartford did none of these things, despite the fact that appellant had previously demanded that Hartford complete performance on the job, despite its knowledge of the bankrupt condition of its principal, and despite the fact of the reservation of rights against it.

Again, whatever validity the criticism of the general rule has in other contexts, it is apparent that in these circumstances any variation of the surety's risk has come about because of its failure to protect itself. I would give effect to the reservation in conformance with the intention of the parties and what I believe to be the correct law on the subject.

I respectfully dissent.