**Robert S. KNIGHT, Appellant,**

v.

**Robert B. CHEEK, III, Appellee.**

**No. 10528.**

District of Columbia Court of Appeals.

Argued Sept. 9, 1976.

Decided Feb. 16, 1977.

---

8. The trial judge found that the gun was in "bona fide plain view."

James D. Newton, Silver Spring, Md., with whom Suzanne V. Richards, Washington, D. C., was on the brief, for appellant.

Dovey J. Roundtree, Washington, D. C., for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal seeks reversal of a judgment by the Superior Court allowing Dr. Robert Cheek, III, appellee, to recover from Dr. Robert Knight, appellant, part of the money which Dr. Cheek paid to C.I.T. Corporation (hereafter C.I.T.), creditor, under a guaranty of appellant Knight's conditional sales contract. The issues are (1) whether the settlement of Dr. Knight's liability to C.I.T. discharged both Dr. Knight and Dr. Cheek, so that subsequent payments by Dr. Cheek to C.I.T. imposed no duty on Dr. Knight to reimburse Dr. Cheek, and (2), assuming a duty on the part of Dr. Knight to reimburse Dr. Cheek, whether Dr. Cheek's cause of action for reimbursement accrued upon payment of each installment by him to C.I.T., or at some other time. We affirm the trial court's holding that Dr. Knight remained liable for those installment payments found to have been made within three years of initiation of this action.

On May 15, 1963, Dr. Knight entered into a conditional sales contract with the

H. L. Hayden Company to purchase dental equipment and to pay for certain remodeling. Dr. Cheek acted as a guarantor for the sales contract. In 1966 C.I.T., assignee of the H. L. Hayden Company, sued Dr. Knight on the sales contract. The suit was compromised in 1969 for $4,000 in settlement of the liability of Dr. Knight under the contract. After C.I.T. had signed the compromise agreement, it demanded of Dr. Cheek the balance ($7,822.68) of its original claim against Dr. Knight. Dr. Cheek agreed to pay this balance and signed a promissory note for that purpose on October 1, 1969. Dr. Cheek completed the monthly installment payments on the note in September, 1972. On February 13, 1975, Dr. Cheek sued Dr. Knight to recover the amount of the note.

The trial court found a duty on the part of Dr. Knight to repay Dr. Cheek on the basis of implied contract. The court stated that Dr. Knight was aware of the guaranty and should have incorporated in the compromise settlement the claim of C.I.T. against Dr. Cheek as guarantor had he wished to avoid his duty to repay. Although the court ruled in favor of Dr. Cheek, it limited his recovery to those payments on the note which he had made within the three years preceding initiation of this action.

■ As a general rule, where the creditor releases a principal, thereby discharging the principal debt, the guarantor is likewise relieved of liability. *Warner Lambert Pharmaceutical Co. v. Sylk,* 348 F.Supp. 1039 (E.D.Pa.1971); *Continental Bank & Trust Co. v. Akwa,* 58 Wis.2d 376, 206 N.W.2d 174, 182 (Wis.1973); *National Bank of La Crosse v. Funke,* 215 Wis. 541, 255 N.W. 147 (1934). The Restatement of Security § 122 (1941)—which uses the terms "guarantor" and "surety" synonymously—puts the burden squarely on the compromising creditor if he wishes to preserve his rights against a guarantor:

Where the creditor releases a principal, the surety is discharged, unless

(a) the surety consents to remain liable notwithstanding the release, or

(b) the creditor in the release reserves his rights against the surety.

■ C.I.T.'s rights were effectively preserved in advance against Dr. Cheek as guarantor by language in the contract of guaranty which provided in part as follows:

Each of us . . . consents that holder may, without affecting our liability, compromise or release, by operation of law or otherwise, any rights against and grant extensions of time of payment to buyer and other obligors or guarantors.

.  .  .  .  .

Such a stipulation was held in *United States v. Krochmal,* 318 F.Supp. 148 (D. Md.1970), to constitute consent by guarantors that release of the principal debtor would not discharge the guarantors. The stipulation constitutes a full and complete waiver by the guarantor of the defense that the principal obligation has been discharged and makes the guarantor liable when the buyer is released. *Fruehauf Trailer Co. of Canada, Ltd. v. Chandler,* 67 Wash.2d 704, 409 P.2d 651 (1966). Therefore, Dr. Cheek was obliged to pay C.I.T. the balance of the corporation's original claim against Dr. Knight.

Dr. Cheek's payments to C.I.T. pursuant to his liability entitled him to reimbursement from Dr. Knight. Even without a contract provision so authorizing, a guarantor may discharge the obligation of a principal without waiting for suit to be filed against him and is thereupon entitled to look to the principal for reimbursement. *See National Surety Corp. v. Peoples Milling Co.,* 57 F.Supp. 281 (W.D.Ky.1944). Even in the absence of express agreement, an implied contract to reimburse in these circumstances arises when the contract of guaranty is made. *United States v. Hendler,* 225 F.2d 106 (10th Cir. 1955); *United States v. Jones,* 155 F.Supp. 52 (M.D.

Ga.1957) ; *In re Beasley-Gilbert's, Inc.,* 285 F.Supp. 359 (S.D.Ohio 1968). *See also Fidelity & Deposit Co. of Maryland v. Hobbs,* 144 F.2d 5 (10th Cir. 1944) ; *Finkelstein v. Keith Fabrics, Inc.,* 278 F.2d 635 (5th Cir. 1960).

■ Given the duty by Dr. Knight to reimburse his guarantor, D.C.Code 1973, § 12–301(7) required that Dr. Cheek bring an action on this implied contract within three years of the time his right to maintain the action accrued. The right of action against the principal debtor for reimbursement accrues upon payment of the debt by the guarantor to the creditor. *McKeeman v. Commercial Credit Equipment Corp.,* 320 F.Supp. 938 (D.Neb.1970). Payment by the guarantor fixes the amount of damages for which the principal is liable to the guarantor and matures the cause of action therefor. *Fidelity & Deposit Co. of Maryland v. Hobbs, supra.*

■ The question becomes, therefore, what action of the appellee constituted such "payment of the debt" as matured his cause of action. Dr. Cheek's promissory note dated October 1, 1969, was in compliance with his duties as guarantor, but did not constitute such "payment" as would have matured the cause of action. A note received for a debt is not "payment" if not itself paid, except in cases where it is expressly agreed to be received as payment. *See* D.C.Code 1973, § 28:3–802(1)(b), which provides:

(1) *Unless otherwise agreed* where an instrument is taken for an underlying obligation

. . . . . .

(b) . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation . . .. [Emphasis supplied.]

Under the law prior to the Uniform Commercial Code the rule was the same. *See Plitt v. Stonebraker,* 90 U.S.App.D.C. 256, 259, 195 F.2d 39, 42 (1952) ; *United States ex rel. Noland Co. v. Maryland Casualty Co.,* 38 F.Supp. 479, 484 (D.Md.1941) ; *Spiotta v. William H. Wilson, Inc.,* 72 N.J.Super. 572, 179 A.2d 49, 53 (1962). *See also United States v. Nill,* 518 F.2d 793, 798 (5th Cir. 1975) ; *United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co.,* 430 F.2d 1077 (2d Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). Since without an express agreement to the contrary the obligation is merely suspended, rather than discharged, the execution of a note cannot be considered payment. The record in the instant case reveals no agreement to the effect that Dr. Cheek's note was taken as payment. Accordingly, the giving of the note did not mature Dr. Cheek's cause of action against Dr. Knight.

In the Restatement of Security § 106 (1941) it is said:

Where the surety makes a part payment to a creditor on account of a default by the principal, the latter is under an immediate duty to reimburse the surety to the extent of the payment.

Thus, a cause of action accrued upon each installment payment as it was made by Dr. Cheek to the creditor. Appellee filed suit in this action on February 13, 1975. Therefore, the statute of limitations ran as to all installment payments made by appellee, except as to those made after February, 1972. The record indicates that appellee made seven payments after that date totaling, according to the trial court, $1,521.10. Appellee is entitled to recover the awarded amount.

Accordingly, the judgment of the trial court is

*Affirmed.*