Albert John ALLEN, Appellant,

v.

Earl Preston YATES, Appellee.

No. 03–CV–520.

District of Columbia Court of Appeals.

Argued Sept. 28, 2004.

Decided March 3, 2005.

Barry J. Rosenthal for appellant.

James J. Faughnan, with whom Julie Quagliano was on the brief, for appellee.

Before SCHWELB, RUIZ and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Albert John Allen, the guarantor of two promissory Notes payable to Admiral Earl Preston Yates, Trustee for the Lucy Welsh Yates Revocable Trust, appeals from an order granting Yates summary judgment in the full amount of the Notes, together with interest and counsel fees. Allen contends that summary judgment was unwarranted because, as a matter of law, his liability had been discharged in its entirety. In the alternative, Allen argues that he is entitled to an offset for moneys and other consideration received by Yates in a settlement resolving Yates' claims against the maker of the Notes, Allen & Associates International, Ltd. (AAI) and certain other parties in privity with AAI. We reject Allen's claim that his obligations have been discharged as a matter of law, but we conclude that a genuine issue of material

fact is presented with regard to whether Allen is entitled to an offset and, if so, in what amount. Accordingly, we reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I.

### FACTUAL BACKGROUND

Yates, in his capacity as Trustee, made loans to AAI, the first in January 1997, in the amount of $83,892.51 (Note No. 1), and the second in September 1997, in the amount of $50,000 (Note No. 2). Each loan was evidenced by a promissory Note and guaranteed by Allen in his individual capacity.[1] Note No. 1 provided for interest at a rate of 30% per year until paid. Note No. 2 provided for interest at a rate of 20% until maturity, and for a rate of 30% thereafter if the indebtedness was not timely paid. AAI, which had become insolvent, defaulted after having made three payments on the loans. Yates has alleged, in an affidavit which Allen has not controverted, that he extended the maturity dates of the Notes after having received an assurance from Allen that AAI was about to obtain a substantial payment in settlement of a dispute with the Department of Defense (DOD). According to Yates, Allen represented that this payment would be used to satisfy Allen's indebtedness.

In April 1999, AAI received a payment of approximately $2.1 million from the DOD. Upon receiving these funds, however, AAI transferred them to The Inter Tech Group, Inc. (TIG), the company's controlling shareholder.[2] In addition, the

---

1. The personal guaranty provision provided that:

 In consideration of the foregoing and of the fact that the undersigned, as Chairman of Maker, is a beneficiary of the Loan and the Prior Loan, the undersigned personally, unconditionally and absolutely guarantees payment to Lender of the total indebtedness

 evidenced by [the Notes] remaining unpaid following Maker's default in payment or performance of its obligations under the Note . . . .

2. TIG owned 70% of AAI's outstanding shares of stock; Allen and his mother owned the remaining 30%.

only other significant asset owned by AAI, consisting of shares of stock in a company named Catamarca Services, Inc. (Catamarca), was transferred to Holding One, Inc. (HOI), a corporation formed by TIG and TIG's controlling shareholders, Jerry Zucker and James Boyd. As a result, AAI was without assets to make any further payments on the Notes.

On July 23, 2001, a confession of judgment in the amount of $57,222.42, representing the principal and accrued interest on Note No. 2, was entered against Allen and AAI in the Circuit Court of the City of Norfolk, Virginia.[3] The judgment was confessed by an attorney-in-fact appointed by Allen pursuant to a provision contained in the Note.[4] On August 6, 2001, Yates brought this suit in our Superior Court against AAI, Allen, TIG, HOI, Zucker, and Boyd. In his complaint, Yates included four separate claims: (1) Breach of Contract, (2) Fraud, (3) Breach of Fiduciary Duty, and (4) Fraudulent Transfers, and he prayed for actual damages in the amount of $310,000, a sum which represented the indebtedness on both Notes, together with interest and counsel fees. Yates also asked the court to award him punitive damages in the amount of $2,500,000. Yates asserted that TIG, Boyd and Zucker caused AAI to transfer all of its assets to TIG, and that Yates was entitled to an award of punitive damages for breach of fiduciary duty and for the allegedly fraudulent transfer of the funds to avoid payment of the indebtedness.

On April 4, 2002, Yates entered into a settlement agreement with AAI, TIG, HOI, Boyd and Zucker (the "settling defendants"). Allen was not a party to this settlement. In the settlement agreement, Yates expressly reserved any and all claims that he might have against Allen. The instrument further provided that nothing therein should be construed as indemnification of Allen by the settling defendants, and the settling defendants denied "any liability or culpability for the allegations, claims and causes of action brought by" Yates. The parties recited in the agreement that the settlement was entered into "in order to avoid the expense of further litigation. . . ." Under the terms of the settlement, Yates was entitled to receive: (1) $75,000 from TIG; (2) upon certain conditions, either (a) $150,000 from AAI from the proceeds of the settlement with the DOD, or (b) $75,000 from TIG; (3) 5% of shares of Catamarca stock possessed by HOI; (4) a seat on the Board of Directors of Catamarca; and (5) in the event Catamarca were to make any payments to HOI, 2.5% of any positive operating cash flow. The action was then dismissed against all settling defendants, but Yates' breach of contract claim against Allen proceeded to contested litigation.

---

3. The first Note did not provide for confession of judgment. The parties dispute the validity of the confession of judgment as to the second Note. *See infra* Part II.F.

4. Paragraph 14 of Note No. 2 provides:
 *Confession of Judgment.* The Maker and the undersigned Guarantor each hereby duly constitutes and irrevocably appoints John D. McIntyre or any other attorney-at-law of the firm of Willcox & Savage, P.C., to be the Maker's true and lawful attorneys-in-fact, in the name, place and stead of the Maker, and upon the occurrence of any default as set forth in this Note, any one of whom shall have the power to confess judgment against the Maker and/or the Guarantor in the Circuit Court of the City of Norfolk, Virginia, or in any other court of record in the State of Virginia, for the full amount of the indebtedness evidenced by this Note (including principal, interest, late fees, disbursements and costs, including reasonable attorney's fees). The Maker hereby ratifies and confirms the acts of said attorney-in-fact as fully as if done by the Maker.

Yates and Allen each filed a motion for summary judgment. On January 31, 2003, the trial judge denied Allen's motion, but she granted Yates' cross-motion as to liability, reserving the determination of damages. Allen asked the court to reconsider its disposition of the issue of liability and to reopen discovery, arguing that his liability should be reduced by payments received by Yates pursuant to the settlement agreement, and that further discovery was reasonably calculated to ascertain facts that would support his claim for an offset.

By order entered on March 13, 2003, the trial judge denied Allen's motion and entered judgment against Allen in the amount of $377,891.94.[5] The judge stayed her order for fifteen days to permit the parties "to submit any reason why the amount of the judgment should be decreased or increased." Allen filed a motion to alter or amend the order of March 13, 2003. By order dated April 15, 2003, the judge denied his motion. On the same date, the judge entered a final judgment in Yates' favor in the amount specified in the March 13 order. Allen filed a timely notice of appeal from the order granting summary judgment and from the denial of Allen's cross-motion.

## II.

### LEGAL ANALYSIS

A. *Standard of review.*

■ Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c). The mov-

ing party has the burden of demonstrating the absence of any genuine issue of material fact. *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983). To defeat a motion for summary judgment, "the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (quoting *Int'l Underwriters, Inc. v. Boyle,* 365 A.2d 779, 782 (D.C.1976)). On summary judgment "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Indeed, while the moving party's papers are "closely scrutinized," the opponent's are to be treated "indulgently." *Fry v. Diamond Constr., Inc.,* 659 A.2d 241, 246 (D.C.1995) (citations omitted).

■ Our review of an order granting summary judgment is *de novo,* and we apply the same substantive standards which are to be applied by the trial court. *Opton, Inc. v. FDIC.,* 647 A.2d 1126, 1128 (D.C.1994) (citations omitted).

B. *Allen's claim that his liability has been discharged.*

■ Allen asserts that his obligations as secondary obligor were extinguished in their entirety by the settlement agreement. He argues that because AAI, the principal obligor, settled Yates' claim against AAI, and because the complaint against AAI had been dismissed, there was no longer a debt to which the guarantee applied. Accordingly, Allen contends that the trial judge should have granted his

---

5. The judgment included interest accrued after the maturity date ($229,553.59). It was calculated on the total outstanding balance

(principal balance of $128,015.38 plus previously accrued interest of $20,322.96).

motion for summary judgment. These contentions are unpersuasive.

■ Allen's claim that the trial judge erred by declining to award summary judgment in Allen's favor is not properly before us. An order denying summary judgment is not a final order, and we have held that "a denial of a motion for summary judgment is not reviewable on appeal, either during trial or after trial." *Hammond v. Weekes,* 621 A.2d 838, 839 n. 1 (D.C.1993) (citations omitted). Moreover, even to the extent that it is offered as a bar to summary judgment in Yates' favor, Allen's claim of total discharge fails.[6]

■ Under the terms of the Notes, Yates had the right to release any obligor from liability singly, without releasing other obligors.[7] On its face, the settlement agreement released AAI and the other settling defendants only, and it did not expressly affect Allen's obligations. It is true that, as a general rule, an obligee's release of the principal obligor discharges the principal's debt and thereby relieves the secondary obligor of liability. *See Knight v. Cheek,* 369 A.2d 601, 603 (D.C. 1977). However, this rule has no application where, as here, the obligee has preserved his rights against the secondary obligor. *See* RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY (hereinafter RESTATEMENT) § 39(b) (1996).[8] In *Knight,* the contract of guaranty provided that the "holder may, without affecting our liability, compromise or release ... any rights against and grant extensions of time of payment to buyer and other obligors or guarantors." 369 A.2d at 603. The court held that this stipulation constituted an acknowledgment

---

6. Allen also argues that recovery on Note No.1 is barred by the District of Columbia's three-year statute of limitations for actions for breach of contract. D.C.Code § 12–301 (2004). He points out that Yates' suit was not brought within three years of December 1, 1997, the maturity date under the terms of the Note. In support of his motion for summary judgment, Admiral Yates filed an affidavit in which he stated: "In December of 1997, Mr. Allen and I orally agreed to extend the date of the Note to the time AAI received payment from the government." Allen did not dispute Admiral Yates' factual assertion that the maturity date had been extended by oral agreement, but challenged the sufficiency of the affidavit.

According to Allen, Yates' affidavit was inadequate because Yates failed to state affirmatively therein that the affidavit was made on personal knowledge and that the affiant was competent to testify to the matters stated in the affidavit. *See* Super. Ct. Civ. R. 56(e). Yates' uncontradicted statement that he personally participated in the conversation described in the affidavit adequately demonstrates his personal knowledge and competence to testify, and Allen's contrary contention, for which he has cited no authority, is without merit.

7. Paragraph 9 of Note No. 2 provides:

> *Rights of Holder.* From time to time, without affecting the obligation of the undersigned or the successors or assigns of the undersigned to pay the outstanding principal balance of this Note ... *without affecting the guaranty of any person* ... the holder hereof may, at its option, extend the time for payment of said outstanding principal balance or any part thereof, reduce the payments thereon, *release anyone liable on any of said outstanding principal balance ....*
> (Emphasis added.)

8. Section 39(b) of the RESTATEMENT provides:

> To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:
> (b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless:
> (i) the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or
> (ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor.

by the secondary obligor that the release of the principal obligor would not discharge the obligations of the secondary obligor, and that the obligee's rights against the secondary obligor remained intact. *Id.*

The stipulation in the contract of guaranty in *Knight* is indistinguishable from the relevant provisions in the promissory Notes at issue in this case. The Notes expressly authorized Yates to release any party from liability from the indebtedness reflected in the Notes without affecting his rights against other obligors. Yates also explicitly preserved this right against Allen in the settlement agreement, which provides, in pertinent part, that "Allen, a former officer and director of Defendant AAI, is not released by this Agreement to the extent he may be liable to the Plaintiff or to any of the Parties to this Agreement." Thus, the settlement agreement did not discharge Allen's obligations as a secondary obligor.

 Allen also argues that his liability on the Notes was extinguished by operation of law as a result of the dismissal with prejudice of Yates' action against AAI, the principal obligor. Allen relies on *Gunnell Construction Co. v. Hartford Accident & Indemnity Co.*, 126 U.S.App. D.C. 64, 374 F.2d 278 (1966), for the proposition that where all claims against the principal have been dismissed, the obligations of the secondary obligor are discharged by operation of law. In *Gunnell*, a contractor sued its subcontractor, claiming breach of contract. The parties settled that claim and filed an unconditional praecipe, dismissing "with prejudice [] all claims, setoffs, and counter-claims." *Id.* 126 U.S.App. D.C. at 65, 374 F.2d at 279. In a later suit brought against the contractor by the subcontractor's surety, the court granted summary judgment against the contractor because the "unconditioned praecipe ... unqualifiedly discharged" the subcontractor. *Id.* 126 U.S.App. D.C. at 66, 374 F.2d at 280. In this case, on the other hand, the dismissal of the principal from the action was not unconditional. On the contrary, Yates expressly preserved his right to maintain his action against Allen. Thus, unlike the obligee in *Gunnell*, Yates exercised the right to release the principal without discharging the secondary obligor, and Allen's claim of discharge fails.

 "A right against other debtors is held to be reserved in any case where it appears from the terms of the release that it was not intended or expected that all the debtors should be released." *Kramer v. Emche*, 64 Md.App. 27, 494 A.2d 225, 231, *cert. denied*, 304 Md. 297, 498 A.2d 1184 (1985) (quoting *Roe v. Citizens Nat'l Bank*, 32 Md.App. 1, 358 A.2d 267, 270 (1976)) (quoting WILLISTON ON CONTRACTS § 338). In the present case, Yates reserved his rights against Allen, and the release of the settling defendants did not extinguish these rights.

### C. *Allen's claim of entitlement to an offset.*

 Under the terms of the promissory Notes, Allen was personally liable to Yates in the event of a default by AAI. It is undisputed that AAI did in fact default, and we have concluded that Allen's obligation as a secondary obligor was not automatically extinguished by Yates' settlement with AAI. Accordingly, to the extent that Yates has not recovered on the Notes (but only to that extent), Allen is liable for the amount of the outstanding debt. *Alger Corp. v. Wesley*, 355 A.2d 794, 797–98 (D.C.1976) (affirming summary judgment in favor of obligee where secondary obligor neither denied the execution of the promissory note reflecting the loan nor raised any defense challenging the validity of the underlying obligation). Yates claims that

Allen is liable for the full amount of the Notes, without offset, because, according to Yates, the settlement agreement did not discharge any part of Allen's obligation. Allen counters that his liability should be reduced by payments and other consideration received by Yates pursuant to the settlement.

█ It is undisputed, and indeed indisputable, that Allen's liability on the Notes is limited to amounts not paid by or on behalf of the defaulting obligor. Under the terms of the Notes, *see supra* page 42 n. 1, Allen "guarantees payment to Lender of the *total indebtedness* evidenced by the ... 'Notes' ... *remaining unpaid* following Maker's default ...." (Emphasis added.) These provisions mirror the rule in the RESTATEMENT, which provides in pertinent part:

§ 19. Suretyship Status—Defenses of Secondary Obligor Against Obligee

Suretyship status gives the secondary obligor a defense to its duties pursuant to the secondary obligations to the extent that:

(a) the underlying obligation has been discharged by performance in accordance with its terms or other satisfaction by the principal obligor.... [9]

█ Moreover, any consideration, whether monetary or otherwise, received by the obligee from the principal obligor in payment of the obligation reduces the creditor's entitlement against the secondary obligor:

When the underlying obligation is the payment of money, and the consideration for the release is monetary, the consideration is indistinguishable from

partial performance by the principal obligor, and ought to be treated as such. Even when the consideration for the release is not in the same form as the underlying obligation, it would reduce the obligee's claim against the principal obligor to the same extent and, therefore, should also be treated as partial performance. *Partial performance by the principal obligor discharges the secondary obligor to the extent of that performance.*

RESTATEMENT § 39 cmt. e (emphasis added).

In this case, application of the foregoing principles is complicated by the fact that Yates made multiple claims against the settling defendants. In his complaint, Yates requested two categories of damages against these defendants: (1) actual damages in the amount of $310,000, with additional interest as calculated to the day of judgment, together with costs and counsel fees as provided in the promissory Notes; and (2) punitive damages in the sum of $2,500,000. Thus, unless the payments and other consideration received by Yates in conformity with the settlement agreement represent resolution solely of Yates' claim for punitive damages, recovery by Yates of amounts not attributable to punitive damages would be contrary to the terms of the contract and deny Allen the offset to which he is entitled pursuant to the principles articulated in the RESTATEMENT.

█ The determination of the extent to which Yates' recovery under the terms of the settlement agreement constitutes payment of AAI's obligation under the Notes, rather than a resolution of the

---

9. The comment to Section 19 elaborates as follows:

*To the extent that* the underlying obligation is discharged by performance or other satisfaction by the principal obligor, the sec-

ondary obligation is also discharged. *The obligee is entitled to only one aggregate performance.*

*Id.* cmt. a (emphasis added).

claim for punitive damages, presents questions both of fact and of law. On its face, the settlement agreement does not resolve the issue. The agreement does not purport to relate to one claim rather than another, nor does it state what, if any, part of the settlement is supposed to represent a resolution of Yates' claim for punitive damages. Rather, the agreement contains boilerplate language discharging the settling defendants from "any and all claims, causes of action, costs, fees, damages, derivative claims, controversies and demands of whatsoever kind or nature, whether or not actually raised or asserted, either in law or in equity, including or relating directly or indirectly to the Principal Action or the Supplemental Action, or otherwise available to Plaintiff from the beginning of time to the date of this Agreement." This is language of absolute release, and it does not resolve the question whether or not, or to what extent, the payments and other consideration to be received by Yates operated to, or did, discharge AAI's indebtedness, or any part of that indebtedness, generated by the promissory Notes. Accordingly, the language of the release cannot serve as the basis for a grant of summary judgment in Yates' favor. Especially when the record is viewed in the light most favorable to the non-moving party, here Mr. Allen, the release cannot be construed as compensating Admiral Yates solely for anything other than his contractual damages. *See, e.g., McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1258 (D.C.1983).

 A further complication arises because, under the terms of the settlement agreement, some of the consideration for the release came from TIG and HOI, and not from AAI, the principal obligor. Technically, any part of the consideration which did not come from AAI, the principal obligor, or from persons in privity with AAI, did not reduce the secondary obligor's liability. *See* RESTATEMENT § 19, quoted at page 11, *supra*. But the obligations of TIG and HOI under the agreement do not negate the existence of a genuine issue of material fact. According to the allegations in Yates' own complaint, AAI was controlled by the other settling defendants, and had been divested of all of its assets. If consideration contributed by the settling defendants was in reality paid on AAI's behalf, then it constitutes partial performance by the principal obligor and discharges the secondary obligation to that extent. To hold that it does not would enable the obligee to recover more than "one aggregate performance," contrary to the RESTATEMENT and to common sense. *See* RESTATEMENT § 19 cmt.a, *supra* note 9; *cf. Berg v. Footer*, 673 A.2d 1244, 1248–49 (D.C.1996).

 Further, in our view, any assertion by Yates that the payments and other consideration received by him resolved only his claim for punitive damages, and were not payments of any part of Allen's indebtedness under the Notes, requires careful scrutiny. One element of the claim for punitive damages is entirely spurious; Yates has cited no authority, and we know of none, for the proposition that a debtor owes a fiduciary duty to a creditor, or that parties in privity with the debtor owe the creditor such a duty. Moreover, the claims of fraud and of fraudulent transfer are closely related to the breach of the underlying contract; Yates asserts, in effect, that AAI and other settling defendants contrived to make it impossible for AAI to perform its obligations under the promissory Notes by stripping AAI of the assets that would have enabled AAI to pay Yates. In other words, the gravamen of Yates' allegation is that AAI (together with parties in privity with AAI) intentionally breached a contractual obligation by

deliberately destroying AAI's ability to carry it out. An *intentional* breach of contract; *i.e.*, here, a breach allegedly accompanied by a bad motive and by deceptive conduct, would sustain an award of punitive damages only if the breaching party's conduct "assumes the character of a willful tort." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.1982).[10] Finally, even if Yates and the settling defendants structured the settlement in such a way that, on its face, it had resolved Yates' demand for punitive damages but had left intact his claim for compensatory damages, this would not necessarily be binding on Allen. Although, in the present case, any assessment of the intentions of the parties would be premature in the absence of an evidentiary record, this court has noted that "a plaintiff might collude with a potentially liable settling defendant to impose the greater liability on another defendant who had greater resources or against whom the plaintiff had more spiteful feelings." *Berg*, 673 A.2d at 1249. To paraphrase *Chicago Title Insurance Co. v. Lumbermen's Mutual Casualty Co.*, 120 Md.App. 538, 707 A.2d 913, 925 (1998) (quoting *Kramer*, 494 A.2d at 228) (phrases in brackets reflect alterations):

> If we were to accept [Yates'] argument, then double recovery would hinge upon the skill of the person drafting the release. If the release attributed nothing to the underlying indebtedness, the debt would still be recoverable in addi-

tion to the amount of the settlement. Neither case law nor fundamental fairness supports such a theory.

As we see it, attributing [the settling defendants'] entire ... payment to [punitive damages], and attributing nothing to the indebtedness of [Allen], can only be seen as a patent attempt to maximize [Yates'] recovery from [Allen].

### D. *Reopening of discovery.*

■ In order to support his claim that the judgment should be offset by amounts which, according to Allen, represent settlement of AAI's indebtedness on the promissory Notes, Allen requested authorization to reopen discovery. Allen contends that through discovery, he could potentially obtain information pertaining to the settling parties' understanding regarding the claims that were being settled and the amount properly and fairly attributable to each claim. Although discovery had been closed on May 30, 2002, Allen did not learn, nor could he have learned, of the contents of the settlement agreement until September 26, 2002, the date on which Yates was ordered by the court to provide Allen with a copy of that agreement. Nevertheless, the trial judge concluded that Allen had failed to raise a genuine issue of material fact, and she granted summary judgment in Yates' favor and denied Allen's motion to reopen discovery.

---

10. We stated in *Sere:*

> It is well-recognized that punitive damages are not favored in the law.... The most appropriate field for their application is the realm of tort actions generally...; but even there, they are available only in cases which present circumstances of extreme aggravation.... The defendant's tortious conduct must have been outrageous, characterized by malice, wantonness, gross fraud, recklessness, or willful disregard of the plaintiffs rights....

> Where the basis of a complaint is, as here, a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious.... The rule in this jurisdiction is that only where the alleged breach of contract "merges with, and assumes the character of, a willful tort" will punitive damages be available.... More precisely, the breach must merge with and assume the character of a willful tort....

> 443 A.2d at 37 (citations omitted).

 In general, "[d]iscovery rulings are confided to the discretion of the trial court. . . ." *Roberts–Douglas v. Meares,* 624 A.2d 405, 415 (D.C.1992). However, "[j]udicial discretion must . . . be founded on correct legal principles, and a trial court abuses its discretion when it rests its conclusions on incorrect legal standards." *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991) (citations omitted). "A [trial] court by definition abuses its discretion when it makes an error of law." *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The trial judge denied Allen's motion to reopen discovery on the basis of her belief that Allen was "not entitled to any reduction in his liability as a result of the compromise of any obligations by AAI." This holding is contrary to the RESTATEMENT and the principles discussed above, and therefore the judge exercised her discretion, at least in part, on the basis of an incorrect legal standard. *Koon,* 518 U.S. at 100, 116 S.Ct. 2035.

Following the disclosure to him of the terms of the settlement agreement, Allen was in a far stronger position to argue that a genuine issue of material fact existed with regard to the nature of the obligations satisfied by AAI's payments pursuant to the settlement agreement and the effect of these payments on Allen's liability. In other words, once Allen had learned of the provisions of the settlement agreement, he was in a position to assert a defense which was not previously available to him. This reinforced the need for additional discovery, and we do not agree with the trial judge's conclusion, as a matter of law, that Allen was not entitled to an offset, that no further discovery was warranted, and that Yates was entitled to summary judgment.

On remand, Allen should be given the opportunity to conduct reasonable discovery regarding the circumstances that led to the settlement agreement, any representations that may have been made at the time by the parties, and the purpose or purposes of any and all payments and other consideration received (or to be received) by Yates from the settling defendants. The trial court should also take into consideration the legal principles discussed in the authorities we have cited, including the RESTATEMENT;[11] *Sere,* 443 A.2d at 37; *Berg,* 673 A.2d at 1249; and *Chicago Title Ins. Co.,* 707 A.2d at 925; as well as the lack of any fiduciary duty on the part of a debtor (or persons in privity with the debtor) to the creditor in this case. Finally, the court should determine whether, in contravention of these legal principles, the relief sought by Yates, or any part of it, would constitute a double recovery.

### E. *Interest.*

Allen also claims that the trial judge erred in determining the interest that

---

11. Because we have relied extensively on the RESTATEMENT, we think it worthwhile to note that, like other Restatements, it was published by the American Law Institute. The Institute is comprised of especially distinguished judges, attorneys and scholars, and "[t]he Restatement may be regarded both as the product of expert opinion and as the expression of the law by the legal profession." *Poretta v. Superior Dowel Co.,* 153 Me. 308, 137 A.2d 361, 373 (1957). We have treated another Restatement as authoritative "[i]n the absence of any current well-developed doc-

trine in our jurisdiction. . . ." *Ellis v. James V. Hurson Assocs.,* 565 A.2d 615, 618 (D.C. 1989). Some courts follow the various Restatements "where we are not bound by the previous decisions of this court or by legislative enactment, feeling that by so doing uniformity of decision would be more nearly effected." *Smith v. Normart,* 51 Ariz. 134, 75 P.2d 38, 42 (1938); *see also Gallimore v. Washington,* 666 A.2d 1200, 1213–14 (D.C. 1995) (dissenting opinion, discussing point not addressed by the majority).

Yates was entitled to recover on the Notes. Specifically, Allen contends that the amount of interest recoverable by Yates should be based on the principal balance (and not on the total outstanding balance, including previously accrued interest). After provisionally adopting Yates' position—that interest should be calculated on the total outstanding balance—the judge invited Allen to propose an alternative formula. The judge ultimately reaffirmed her initial interest calculation, but did not articulate specific reasons for doing so.

■■■■ Although the parties have not discussed it, we refer to the statutory context in which the issue arises. In the District of Columbia, pre-judgment interest must be awarded if the underlying debt is liquidated and if such interest is "payable by contract or by law or usage." *See* D.C.Code § 15–108 (2001);[12] *Nolen v. District of Columbia*, 726 A.2d 182, 184 (D.C.1999). Interest accrues on "the principal debt from the time when it was due and payable," at the rate fixed by the contract, if any. A debt is liquidated if its amount was readily ascertainable at the time it arose. *District of Columbia v. Pierce Assocs.*, 527 A.2d 306, 311 (D.C. 1987).

■■■■ In this case the amount of interest payable to Yates has been determined by contract. The parties have expressly specified the rate of interest, and the manner in which interest must be calculated, in the event a party defaulted on its obligations. Note No. 1 provides for interest at a rate of 30% per annum *until paid*. Thus, the parties have explicitly agreed upon the accrual of interest until full recovery of the principal debt, thereby obviating the need for a statutory entitlement to "pre-judgment" interest. Yates argues, and the trial court held, that interest should be calculated on the principal debt plus previously accrued interest. If we were to adopt Yates' position, we would, in essence, be awarding Yates compound interest.

Note No. 1 is silent as to whether interest should be simple or compound. In applying § 15–108, however, we have held that "where the contract does not specifically require compound interest, we are reluctant to imply such a term absent a showing of agreement between the parties, particularly a term in aid of the party that drafted the writing." *Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1304 (D.C.1979). Accordingly, we conclude that because the parties did not provide for compound interest, interest on Note No. 1 should be calculated on the principal balance alone.

■■■■ Application of the foregoing principles to Note No. 2 is complicated by the fact that the Note provides for two distinct interest rates. Specifically, Note No. 2 reads:

> Commencing on the date hereof this Note will accrue *interest on the principal balance* hereof from time to time outstanding at the rate of 20% per annum.... If all amounts due under this Note are not paid in full on or before the Maturity Date, the *interest rate on this Note shall be increased to 30%* per annum as of December 2, 1997, and continuing until this Note is paid in full.

(Emphasis added.) Thus, in return for the delay in receiving the amount due on the

---

12. Section 15–108 provides:
 > In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, *at the rate fixed by the contract,* if any, until paid.
 > (Emphasis added.)

Maturity Date, the contract awards Yates an additional 10% per annum on the principal balance. This constitutes the "rate fixed by contract" within the meaning of § 15–108.

The separate 20% and 30% rates in Note No. 2 serve different purposes. The basic 20% rate was indisputably intended to serve as compensation to the creditor for the use of his money. The increase of the rate to 30% in case of default, on the other hand, was intended to encourage timely payment of the indebtedness and to compensate the lender for the time expended and for the value of money lost as a result of any delay in obtaining a judgment.

By the explicit terms of Note No. 2, interest (whether at the rate during the term of the Note or at the increased rate after maturity) accrues *on the principal balance,* only, and not on the total outstanding balance.[13] Calculation of interest on the total outstanding balance would be contrary to the agreed upon terms of the Note.

■■■■ Moreover, the purpose of prejudgment interest, and of the statute authorizing it, is to assure that "the wronged party can be made whole." *Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1255 (D.C.1990). Where the parties have entered into a contract, being made whole means realizing the benefit of the

bargain that they struck. As to Note No. 2, calculation of interest as proposed by Yates would do more than make Yates whole; it would give him *both* the benefit of a 50% increase in the rate of interest (the remedy negotiated by the parties) *and* an increased base from which interest is to be calculated. Accordingly, we conclude that interest should be calculated on the principal balance alone.

F. *Confession of judgment as to Note No. 2.*

Allen asserts that in light of the confession of judgment entered in the Circuit Court of the City of Norfolk, Virginia, with respect to Note No. 2, Yates is not entitled to judgment on that Note in the present proceeding. Relying on an affidavit in which he averred his "understanding" that the clerk of the court did not serve Allen with a copy of the judgment within ten days of its entry, as required by the Virginia statute,[14] Yates responds that the confessed judgment is void. Yates' affidavit obviously is not based on personal knowledge, for his "understanding" must have been derived from something that someone else had told him. *See* Super. Ct. Civ. R. 56(e). Nevertheless, Allen, who must know whether or not he was served in timely fashion with a copy of the judgment, has not contradicted Yates' deficient affidavit.

---

13. By "total outstanding balance," we refer to the principal balance plus accrued interest.

14. Va.Code Ann. § 8.01–438 (2004) provides: If a judgment is confessed by an attorney-in-fact, it shall be the duty of the clerk within ten days from the entry thereof to cause to be served upon the judgment debtor a certified copy of the order so entered in the common-law order book, to which order shall be appended a notice setting forth the provisions of § 8.01–433. The officer who serves the order shall make return thereof within ten days after service to the clerk. The clerk shall promptly file the order with the papers in the case. The

failure to serve a copy of the order within sixty days from the date of entry thereof shall render the judgment void as to any debtor not so served.

Admiral Yates stated in his affidavit that: "It is also my understanding that the Confession of Judgment was not served upon Mr. Allen within six (6) months of entry of Judgment rendering the judgment void under the Virginia statute." The parties have not explained, in light of the last sentence of the statute, why the six-month period to which Yates referred in his affidavit, is relevant to the validity *vel non* of the confession of judgment.

The parties have not made it clear to us whether, or why, the dispute over the validity of the confession of judgment affects the result of this litigation. Obviously, if Allen claims that the confessed Virginia judgment is valid and enforceable, and that it therefore reduces the amount to which Yates is entitled to recover in the Superior Court action, he cannot thereafter assert in Virginia that the confessed judgment is invalid. Conversely, Yates cannot be heard to say in the District of Columbia litigation that the confessed judgment is void, but then seek to enforce that judgment in Virginia. *See, e.g., Novelli v. Bender,* 817 A.2d 185, 188 (D.C.2003) (applying doctrine of "judicial estoppel" where party switched legal positions in two related judicial proceedings). In the event that, on remand, the trial court determines that the validity *vel non* of the confessed judgment is relevant to the disposition of this case (*e.g.*, to the question whether any offset to which Allen may be entitled applies to Note No. 2 as well as to Note No. 1),[15] that issue should be resolved by the reception of admissible evidence, rather than on the basis of one party's "understanding" and the opposing party's silence.

## III.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

15. It may, of course, be relevant that the confessed judgment was filed prior to the date of the settlement agreement. Any indication that the parties to the settlement agreement were aware of the existence of the confessed judgment could affect the question whether the settlement agreement was related to AAI's obligations under Note No. 2.